

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF EASTERN DISTRICT OF VIRGINIA

-------------------------------------------------------X

DRY HANDY INVESTMENTS LTD.,        :

                                      :

           Plaintiff,           :

                                        :

     -   against -        :

                                        :

CORVINA SHIPPING CO. S.A.   :

and COMPANIA SUD AMERICANA DE  :

VAPORES S.A.,

                                        :

           Defendants.      :

-------------------------------------------------------X

2:13cv678

## VERIFIED COMPLAINT

Plaintiff, Dry Handy Investments Ltd., as and for their Verified Complaint against the Defendants, allege upon information and belief as follows:

### JURISDICTION

1.      This is a case of admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for breach of a maritime contract.

2.      The Court also has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

3.      The Court also has supplemental and/or ancillary jurisdiction over any and all non-maritime claims, if any.

### PARTIES

4.      Dry Handy Investments Ltd. ("DHI") is a company incorporated under the laws of the British Virgin Islands, with a registered office at Romasco Place, Wickhams Cay 1, Road Town Tortola, British Virgin Islands.

1

5.      Corvina Shipping Co. S.A. ("Corvina") is a company incorporated under the laws of the Republic of Panama, with a registered office at Calle 931 No. 3-80 Ciudad de Panama, Panama.

6.      Compania Sud Americana de Vapores S.A. ("CSAV") is a company organized and existing under the laws of Chile, with offices at Plaza Sotomayor 50, Valparaiso, Chile.

7.      CSAV owns 100 % of the shares of Corvina and is Corvina's corporate parent.

## FACTS

8.      Drylog Bulk Carriers, Inc. ("DBC") and Corvina entered into a Joint Venture Agreement ("JVA") dated November 20, 2003 in respect of the company Dry Bulk Handy Holding Inc. ("DBHH"), which was amended on October 28, 2004 and again in 2006.

9.      By Deed of Accession, Novation and Amendment dated December 17, 2007 between DBC, Corvina and DHI, DHI replaced DBC as Corvina's joint venture partner in respect of DBHH.

10.     The JVA is a maritime contract under the general maritime law of the United States as it involves the operation and management of ocean going vessels in international trade.

11.     At all material times, both Corvina and DHI owned and continue to own 50% of the shares in DBHH and each company had and still has two directors on the board of DBHH.

12.     The purpose of DBHH is to operate ocean going vessels in the drybulk handymax/panamax sector of the shipping market.

13.     From the commencement of the joint venture in DBHH, DBHH has entered into long-term charter party contracts with third parties pursuant to which it has agreed to charter-in certain ships from Japanese shipowners, with purchase options.

2

14.     The ships chartered by DBHH from the Japanese shipowners include: the BULK CHILE, the BULK PHOENIX, the BULK PATAGONIA, the BULK GUATEMALA, the BULK ATACAMA, the BULK COSTA RICA, the BULK URUGUAY, the BULK ECUADOR, the BULK COLOMBIA and the BULK PERU (the "Charter Party Contracts").

15.     Pursuant to the Japanese shipowners' requests and as a condition of entering into the Charter Party Contracts, they have been fortified by guarantees issued by DBC in relation to DBHH's obligations as charterer.

16.     Clauses 9.6 and 9.8 of the JVA provide that where both shareholders agree that both or either of them (or any member of their respective corporate groups) provide any guarantee for the performance of the obligations of DBHH, then the performance of such guarantee shall be borne by the shareholders equal to their shareholding in DBHH.

17.     Further, the JVA provides that in consideration of one shareholder issuing such a guarantee, the other shareholder shall issue and deliver a counter-guarantee in writing to the first shareholder.  In addition, the shareholder issuing the guarantee can seek a further counter-guarantee from the parent company of the shareholder issuing the counter-guarantee.

18.     During the course of the JVA, DBC issued such guarantees to the Japanese shipowners (the "Guarantees"), but Corvina has failed and refused to issue and deliver its own and CSAV's counter-guarantees to DBC and DHI, as DBC's substitute joint venturer, when demanded.

19.     Due to current market conditions, DBHH is not making a profit on the long-term Charter Party Contracts with the Japanese shipowners, and it is reasonably anticipated that Corvina and DHI will, as shareholders, be required to make capital contributions into DBHH in 2014 in order to fulfil DBHH's obligations to pay hire under the Charter Party Contracts.

3

20.     In the event of any default by DBHH under the Charter Party Contracts, DBC, as guarantor, is exposed under their guarantees, with an exposure reasonably estimated at present to be in the region of USD $53,600,000 (fifty three million and six hundred thousand United States dollars) or USD $55,592,000 (fifty five million and five hundred and ninety-two thousand United States dollars), 50% of which should be borne by each JVA partner or its parent/affiliated company.

*Original Demand Notices*

21.     By demands on July 23, 2013, August 12, 2013, August 16, 2013, and August 26, 2013, DHI asked Corvina to rectify its breaches of Clauses 9.6 and 9.8 of the JVA and provide the required counter-guarantees (the "Original Demand Notices").

22.     Further, as per the JVA, DHI provided Corvina with 21 business days to rectify these material breaches.

23.     When demanded by DHI, Corvina failed to provide the counter-guarantees within the 21 business days or at all, which constituted an Event of Default within the meaning of Clause 13 of the JVA.

24.     As a result of Corvina's default, and in accordance with the terms of the JVA, on September 9, 2013 DHI notified Corvina that it was required, pursuant to Clause 13 of the JVA, to sell DHI its Shares in DBHH ("the Sale Shares").

25.     In further accordance with Clause 13 of the JVA, DHI instructed Deloitte & Touche, the auditors of DBHH, to undertake the relevant valuation of DBHH ("the Sale Share Notice") for purposes of the required sale of shares by Corvina to DHI.

26.     By Deloitte's valuation dated October 25, 2013, DBHH has a negative value of $53,600,000.

4

27.     In order for Corvina to sell DHI shares of a negative value, Corvina is thus required to pay DHI the sum of $26,800,000 in consideration of its shares being transferred to DHI.

28.     In accordance with Clause 13.1 of the JVA, completion of the Sale of Shares was required to take place within 10 days of the price being determined at a date and time designated by the non-defaulting shareholder.  Thus, Corvina was required to sell its shares in DBHH to DHI not later than November 4, 2013.

*Second Demand Notice*

29.     In response to Corvina's allegation that the Original Demand Notice was defective, DHI made a further demand on September 11, 2013 and asked Corvina to rectify its breaches of Clauses 9.6 and 9.8 of the JVA and provide the required counter-guarantees (the "Second Demand Notice"). The Second Demand Notice was sent without prejudice to DHI's position that the Original Demand Notices were valid.

30.     Further, as per the JVA, DHI provided Corvina with 21 business days to rectify these material breaches.

31.     When demanded by DHI, Corvina failed to provide the counter-guarantees within the 21 business days or at all, which constituted an Event of Default within the meaning of Clause 13 of the JVA.

32.     As a result of Corvina's default, and in accordance with the terms of the JVA, on October 23, 2013 DHI notified Corvina that it was required, pursuant to Clause 13 of the JVA, to sell DHI its Shares in DBHH ("the Sale Shares").

33.    In further accordance with Clause 13 of the JVA, DHI instructed Deloitte & Touche, the auditors of DBHH, to undertake the relevant valuation of DBHH ("the Sale Share Notice") for purposes of the required sale of shares by Corvina to DHI.

34    By Deloitte's valuation dated November 8, 2013, DBHH has a negative value of $55,592,000.

35.    In order for Corvina to sell DHI shares of a negative value, Corvina is thus required to pay DHI the sum of $27,796,000 in consideration of its shares being transferred to DHI.

36.    In accordance with Clause 13.1 of the JVA, completion of the Sale of Shares was required to take place within 10 days of the price being determined at a date and time designated by the non-defaulting shareholder. Thus, Corvina was required to sell its shares in DBHH to DHI not later than November 18, 2013.

*Arbitration Proceedings*

37.    On November 4, 2013, Corvina commenced arbitration proceedings before the London Court of International Arbitration ("LCIA"), as per the terms of the JVA, seeking declarations that the provisions of the JVA have been wrongfully invoked by DHI. DHI's counterclaim in the arbitration proceedings is for the Transfer of Shares in DBHH against payment to DHI by Corvina of $26,800,000 or, in the alternative, $27,796,000.

38.    CSAV's published Third Quarter Consolidated Financial Report contains the following description of the dispute between DHI and Corvina (freely translated from Spanish to English):

**Subsequent Events to Date of the Financial Statement**

Dated on November 4th, our subsidiary, Corvina Shipping Co. S.A. (Panamá, Corvina), presented a request for arbitration in the LCIA, in relation with a joint

venture dated 23rd November 2003 (JVA), signed regarding participation in the associate "Dry Bulk Handy Holding Inc." (Panama, DBHH), so that the designated tribunal declare Corvina is not obliged, under JVA to counter-guarantee Dry Log Ltd. (Bermuda, Dry Log), or seek the counter-guarantee from CSAV, for the performance guarantees on the long term contracts signed for DBHH and Drylog between 2007 and 2011, with Japanese owners.

This request for arbitration was prompted by the statement of an alleged breach of the JVA made by the other shareholder of DBHH, Dry Handy Investments Ltd (British Virgin Island, DHI), Dry Log subsidiary, because they didn't get the counter-guarantees required for the first time in July 2013. Corvina doesn't recognize any value to the request made by DHI, by deems unfounded.

The contractual position of Corvina has been reviewed by legal counsel, whose opinions are favorable, in response to what they agreed in the JVA regarding the granting of guarantees DBHH operations. Notwithstanding the foregoing and given the very early progress of this arbitration, it is not possible to estimate outcome.

## FIRST CAUSE OF ACTION – BREACH OF CONTRACT

39.     Paragraphs 1 through 38, above, are incorporated in this First Cause of Action for breach of contract as if fully set forth herein.

40.     Despite DHI's demands, Corvina has failed and refused to complete the Sale of Shares, which constitutes a material breach of the JVA, pursuant to the Original Demand Notices and/or the Second Demand Notice.

41.     As a result of Corvina's breach of the JVA, DHI has and will continue to suffer damages in an amount not less than $26,800,000 or, in the alternative, $27,796,000.

## SECOND CAUSE OF ACTION – ALTER EGO LIABILITY OF CSAV

42.     Paragraphs 1 through 39, above, are incorporated in this Second Cause of Action as if fully set forth herein.

43.     At all material times, CSAV totally dominated and controlled Corvina as an alter ego, subservient entity and/or instrumentality.

44.     At all material times, CSAV was the 100% owner and corporate parent of Corvina.

45.     At all material times, Corvina was so dominated and controlled by CSAV to the extent that for all practical purposes Corvina's corporate separateness was indistinguishable from that of CSAV and it was actually carrying on the CSAV's business and not its own.

46.     An objective of CSAV in the way it dominated and controlled Corvina was and now is to obscure the assets and responsibilities of CSAV and to mislead and deceive its creditors and contractual counter-parties, including the Plaintiff.

47.     Upon the establishment of the joint venture, CSAV sent an employee, Carlos Pena ("Pena"), to work on ~~secondment~~ assignment/PMB with C Transport Maritime S.A.M., of Monaco.  C Transport Maritime was the manager of the ships chartered by DBHH under the long-term Charter Party Contracts.  At all material times, Pena reported directly to CSAV's Santiago Bielenberg, as well as CSAV's accounting and legal departments.

48.     Santiago Bielenberg ("Bielenberg") is a senior vice president of CSAV and, at all material times, communicated for and on behalf of Corvina in respect of the JVA.

49.     Oscar Hasbun Martinez ("Hasbun") is now the Chief Executive Officer of CSAV, and at all material times was employed as an officer or manager of CSAV.

50.     At all material times, Juan Antonio Alvares ("Alvarez") was an officer and director of CSAV.

51.     During the course of the JVA, either Bielenberg, Hasbun or Alvares sent and received emails exclusively relating to Corvina's business interests in DBHH from CSAV email addresses.

52.     Corvina has no separate email addresses of its own, but relies upon CSAV's email system.

53.     Corvina has no employees of its own, but rather relies on CSAV's employees and, specifically in relation to the joint venture and operations of DBHH, relied exclusively on CSAV's employees to conduct its business.

54.     Corvina maintains no actual offices of its own.

55.     Corvina has no phone or fax numbers.

56.     Covina has no internet website.

57.     Correspondence to or from Corvina during the course of the joint venture was care of CSAV's offices in Valparaiso, Chile.

58.     Correspondence between DBHH and Corvina was signed by either Bielenberg, Hasbun or Alvares for and on behalf of Corvina.

59.     Transactions entered into by DBHH were approved by CSAV, and not Corvina in its own right as would be expected for a purportedly distinct corporate entity with its own discretion and decision making powers.

60.     The directors appointed by Corvina to sit on the DBHH board were, at all relevant times, either Bielenberg, Hasbun or Alvares.

61.     When Corvina sought to replace directors on DBHH's board, notices were sent by CSAV's legal department.

62.     The JVA expressly provides for notices under the JVA to be sent to CSAV, and not Corvina, and to the attention of CSAV's Chief Financial Officer.

63.     Upon negotiation of certain of the Charter Party Contracts to be entered by DBHH (the BULK PARAISO), Bielenberg sent an email using his CSAV email address,

confirming that that the transaction is approved by CSAV, but providing no similar confirmation by Corvina itself.

64.     At the beginning of 2013 regarding DBHH entering into a Revenue Sharing Agreement, an employee of CSAV, Ricardo Lara, who upon information and belief is not an officer or director of Corvina or DBHH, sent comments on the agreement on CSAV's behalf.

65.     Upon information and belief, Corvina does not, and has not at any time, conducted regular meetings of directors and has failed to maintain proper corporate books and records, including minutes of director meetings, corporate resolutions, etc.

66.      Corvina and CSAV have overlapping officers and directors, to wit:

        a.      Hector Arancibia Sanchez was or is an officer of CSAV and director of
                Corvina; and

        b.      Nicolas Burr Garcia de la Huerta was or is the Chief Financial Officer of
                CSAV and a director of Corvina.

67.     In specific relation to the joint venture, CSAV and Corvina have participated in cross-collateralization, to which Clause 9.8 of the JVA provides that CSAV is to provide a counter-guarantee for any counter-guarantees issued by Corvina to DHI.

68.     During the course of the joint venture, CSAV made at least one payment in excess of $1,000,000 on Corvina's behalf in relation to DBHH funding.

69.     At all material times, CSAV and Corvina:

        a.      failed to maintain corporate formalities;

        b.      did not operate at arms-length in their transactions with respect to DBC
                and DHI in respect of the joint venture in DBHH; and

        c.      have shared common employees, officers and management

for day-to-day operations.

70.     CSAV has dominated and controlled Corvina to such a degree that Corvina has no bona fide existence separate and apart from CSAV and conducts no business of its own.

71.     There is a commonality of operation, control, cross-collateralization of assets and pooling and transfer of funds between CSAV and Corvina such that the entities act as, are routinely considered, and actually are, a single economic unit and hence alter egos of the others.

72.     Corvina constitutes and alter ego CSAV such the corporate form of Corvina must be disregarded as a matter of law and equity and Defendants are therefore liable jointly and severally for the Plaintiff's claims herein.

**Request for Admiralty Rule B Relief**

73.     The Defendants cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

74.     Upon information and belief, Defendants, or either of them, have or will shortly have, property within this District, comprised of vessels, vessel fuel/bunkers, cash, funds, credits, debts, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendants, or either of them and other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein, including but not limited to T. Parker Host, the marine agent for CSAV within the District.

75.     More specifically, and upon further information and belief, the M/V LIMARI, a vessel legally, equitably and beneficially owned by CSAV, and/or which is the subject of a charter party contract between CSAV and the nominal owner of the vessel is, or will be during the pendency of this action, within this District.

11

76.     According to CSAV's 2007 Annual Report, on May 31, 2005, CSAV ordered the construction of the LIMARI from a shipyard.

77.     According to CSAV's 2007 Annual Report, upon construction of the LIMARI, it was delivered and incorporated by a joint venture among subsidiaries of the Company and a third party.

78.     Also according to CSAV's 2007 Annual Report, CSAV issued a bond of in favor of HSH Nordbank to finance the vessel.

79.     Presently, the LIMARI's registered owner is Limari Shipping Ltd., with a registered office Care of Southern Shipmanagement Co. SA ("Southern Shipmanagement"), 4th Floor, Tecnopacifico Building, Calle Blanco 937, 2361845 Valparaiso, Chile.

80.     According to CSAV's Annual Reports, Limari Shipping Ltd. is an "associate" company of CSAV.

81.     According to CSAV's Annual Reports, Hector Arancibia Sanchez is an officer or director of Limari Shipping Ltd., in addition to his roles as an officer of CSAV and director of Corvina.

82.     According to CSAV's Annual Reports, Southern Shipmanagement is an "associate" company of CSAV.

83.     According to CSAV's Annual Reports, Hector Arancibia Sanchez is the vice chairman of Southern Shipmanagement, in addition to his roles as an officer of CSAV, director of Corvina and officer or director of Limari Shipping Ltd.

84.     Accordingly, the M/V LIMARI is legally, equitably and beneficially owned by Defendant CSAV.

**WHEREFORE**, Plaintiffs pray:

A.     That process in due form of law according to the practice of this Court may issue against Defendants citing them to appear and answer the foregoing;

B.     That if Defendants cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendants up to and including $27,796,000 with interest and costs in the amount of $1,000,000 plus attorneys' fees, be restrained and attached, including but not limited to any vessels owned by the Defendants, as well as any cash, funds, escrow funds, credits, debts, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendants within the possession, custody, or control of any garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein or any other order of the Court;

C.     For judgment enforcing any ultimate arbitration award that may be rendered against Defendant Corvina Shipping Co. S.A.;

D.     For judgment against Defendant Corvina Shipping Co. S.A. awarding Plaintiff its costs and reasonable attorney's fees;

E.     For judgment against Defendant Corvina Shipping Co. S.A. awarding Plaintiffs such other, further and/or different relief as the Court deems just and proper;

F.     For judgment against Defendant Compania Sud Americana de Vapores S.A. holding it liable for the Plaintiff's claims as the alter ego of Defendant Corvina Shipping Co.S.A.; and

G.     That this Court retain jurisdiction over the matter for any subsequent enforcement action as may be necessary.

DRY HANDY INVESTMENTS, LTD

By:

Philip N. Davey (VSB No. 14061)
Patrick M. Brogan (VSB No. 25568)
Christopher N. Harrell (VSB No. 83954)
DAVEY & BROGAN, P.C.
Attorneys for Plaintiff
101 Granby Street, Suite 300
Norfolk, VA 23510
Telephone:    (757) 622-0100
Facsimile     (757) 622-4924
Email:  pdavey@daveybroganpc.com
              pbrogan@daveybroganpc.com
              charrell@daveybroganpc.com

14

## VERIFICATION

Patrick M. Brogan declares as follows:

1.      I am an attorney with the firm of Davey & Brogan, counsel for the Plaintiff herein.

2.      The facts alleged in the foregoing Verified Complaint are true and correct to the best of my knowledge and belief based upon information and records provided to me from employees and representatives of the Plaintiff through its agents, underwriters and attorneys.

3.      Authorized officers of Plaintiff are not within the district or readily available to sign this Verification on behalf of Plaintiff.

4.      Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Date:   November 27, 2013
        Norfolk, Virginia

DRY HANDY INVESTMENTS, LTD

By:     _____
        Patrick M. Brogan (VSB No. 25568)
        DAVEY & BROGAN, P.C.
        Attorneys for Plaintiff
        101 Granby Street, Suite 300
        Norfolk, VA 23510
        Telephone:    (757) 622-0100
        Facsimile     (757) 622-4924
        Email: pbrogan@daveybroganpc.com

1