**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**IN ADMIRALTY**

**DRY HANDY INVESTMENTS LTD.,**

      **Plaintiff,**

    **v.**                                        **Civil Action No. 2:13cv678**

**CORVINA SHIPPING CO. S.A.**
**And COMPANIA SUD AMERICANA DE VAPORES S.A,**

      **Defendants.**

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH ORDER OF**
**ATTACHMENT AND GARNISHMENT AND REQUEST FOR EXPEDITED HEARING**
**PURSUANT TO ADMIRALTY RULE E(4)(f) AND ATTORNEYS' FEES AND COSTS**

      COMES NOW, Limari Shipping, Ltd. ("Limari") and ("Claimant"), by and through

undersigned counsel, and in support of its Motion to Quash Order of Attachment and

Garnishment and Request for Expedited Hearing Pursuant to Admiralty Rule E(4)(f) and

Attorneys' Fees and Costs, states as follows:

<u>INTRODUCTION</u>

      In violation of longstanding U.S. Supreme Court precedent on the scope of admiralty

jurisdiction, and in violation of Fourth Circuit requirements to plead alter ego liability, Plaintiff

has wrongfully seized the M/V LIMARI in an attempt to force Limari, Corvina Shipping Co.

S.A. ("Corvina") and/or Compañía Sud Americana De Vapores S.A. ("CSAV") to pay

substantial funds into the Court as security for a non-maritime claim.  In support of its Verified

Complaint, Plaintiff relies entirely upon a Joint Venture Agreement ("JVA") which it alleges was

breached, but which Plaintiff failed to provide to the Court.  On its face, the JVA renders this

Court without jurisdiction for the attachment and demonstrates the invalidity of Plaintiff's claims. Plaintiff lacked a good faith basis for the attachment, and the attachment should be immediately quashed with the award of attorneys' fees and costs related to the attachment to Claimant.

## LAW APPLICABLE TO RULE B ATTACHMENTS AND RULE E HEARINGS

Rule E(4)(f) provides that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated…"

"The burden to show why continued attachment is proper is the plaintiff's to bear." Vitol, S.A. v. Primerose Shipping Co. Ltd., 708 F.3d 527, 541 (4th Cir. 2013) (internal citation and quotation omitted). "To avoid vacatur of attachment, it is the plaintiff's burden to show that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Id.

Relevant for this motion is the first requirement that Plaintiff must show "it has a valid prima facie admiralty claim against the defendant." Id. This standard requires that the claim advanced must be a claim within the Court's admiralty jurisdiction. Euro Trust Trading S.A. v. Allgrains U.K. Co., 09 CIV. 4483 (GEL), 2009 WL 2223581 at *3 (S.D.N.Y. July 27, 2009) ("Rule B provides a specific procedural remedy, not available in other federal civil cases, in cases that are within the jurisdiction of the federal court because of their maritime nature."). "Whether a claim is properly considered a maritime claim for purposes of the applicability of

Rule B is a purely procedural issue, and thus is governed by federal law irrespective of the law to be applied to any underlying claims."  Id.;  Indagro S.A. v. Bauche S.A., 652 F. Supp. 2d 482, 489-90 (S.D.N.Y. 2009).

To meet this requirement, Plaintiff's allegations must also be sufficient to demonstrate Plaintiff has a valid claim.  Rule E(2)(a) requires that the Plaintiff plead the allegations with particularly.  "Rule E(2)(a)'s requirement for pleading specific circumstances is one part of the process which guards against the improper use of admiralty seizure proceedings. Thus, the rule's heightened particularity in pleading requirement is always subject to the general standard that the complaint sufficiently notify the defendant of the incident in dispute and afford a reasonable belief that the claim has merit." United States v. Mondragon, 313 F.3d 862, 865 (4th Cir. 2002) (internal citation and quotations omitted).

Specifically, "[a]llegations of alter ego liability address the [..] requirement of Rule B maritime attachments—that the plaintiff show it has a legitimate *prima facie* admiralty claim against the defendant.  Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd., 622 F. Supp. 2d 46, 53 (S.D.N.Y. 2009).   The Court may properly vacate an attachment when the Verified Complaint fails to adequately plead facts necessary to demonstrate a reasonable belief to support the claim of alter ego.  See Vitol, S.A. v. Primerose Shipping Co. Ltd., 708 F.3d 527, 545 (4th Cir. 2013).  To determine whether sufficient facts are pled to support piercing of the corporate veil, the Court should apply U.S. maritime law.  Blue Whale Corp. v. Grand China Shipping Dev. Co., Ltd., 722 F.3d 488, 500 (2d Cir. 2013).[1]

---

[1] Blue Whale Corp. holds that the Court should reject any "choice of law" provision in the parties' agreement because a piercing the veil analysis is collateral to the contract, and a Court is not bound by an agreed choice of law provision.  Instead, the Second Circuit explained that a district court must apply the

### PLAINTIFF FAILS TO PLEAD AN ADMIRALTY CLAIM BECAUSE THE JOINT VENTURE AGREEMENT IS NOT A MARITIME CONTRACT.

To plead a valid admiralty claim, Plaintiff must allege a claim within the Court's admiralty jurisdiction.  Euro Trust Trading S.A. v. Allgrains U.K. Co., 2009 WL 2223581 at *3. Plaintiff alleges its complaint is within the Court's admiralty jurisdiction because it "involves a claim for breach of a maritime contract."  (Docket No. 1 at ¶1).  The alleged maritime contract is the Joint Venture Agreement dated November 20, 2003 (Id. at ¶10).

"Maritime jurisdiction when founded upon contract depends upon the nature and subject matter of the contract." Sanderlin v. Old Dominion Stevedoring Corp., 385 F.2d 79, 81 (4th Cir. 1967).  It has long been held, "[t]he mere fact that a ship is involved will not bring the cause within the jurisdiction of the admiralty court." Jones v. One Fifty-Foot Gulfotar Motor Sailing Yacht, 625 F.2d 44, 47 (5th Cir. 1980).   And "[n]ot every contract that touches incidentally on maritime activities is a maritime contract; for maritime character to attach, there must be a direct and proximate juridical link between the contract and the operation of the ship." Coutsodontis v. M/V ATHENA, CIV.A. 08-4285, 2008 WL 4330236 (E.D. La. Sept. 16, 2008) aff'd sub nom. Coutsodontis v. Sea Trade Mar. Corp., 571 F.3d 1341 (5th Cir. 2009).

To be a maritime contract the subject matter of the contract "must be directly and intimately related to the operation of a vessel and navigation; it is not enough that the contract relate in some preliminary (shoreside) manner to maritime affairs."  Maritima Petroleo E

---

traditional Lauritzen v. Larsen, 345 U.S. 571 (1953) analysis.  In Blue Whale Corp. the Second Circuit, based almost entirely upon the presence of the *res* in the United States, held that the Lauritzen analysis required application of U.S. law.   Blue Whale Corp. v. Grand China Shipping Dev. Co., Ltd., 722 F.3d at 500.  As the vessel at issue is property located in the United States, this Court should similarly look to U.S. law.

Engenharia LTDA v. Ocean Rig 1 AS, 78 F. Supp. 2d 162, 169 (S.D.N.Y. 1999) (citing 1 *Schoenbaum* § 3–10 at 111).

Further, admiralty jurisdiction arises only when the subject-matter of the contract is "purely" or '"wholly maritime in nature." Maritima Petroleo E Engenharia LTDA v. Ocean Rig 1 AS, 78 F. Supp. 2d 162, 170 (S.D.N.Y. 1999). "A 'mixed' contract, *i.e.,* a contract that contains both admiralty and non-admiralty obligations is, therefore, usually not within admiralty jurisdiction. Id.

THE JVA IS A NON-MARITIME SHAREHOLDER AGREEMENT

To sustain the attachment, this Court must review the Joint Venture Agreement ("JVA") and determine whether it is a maritime contract. But the JVA was not even attached to the Complaint. (See Docket No. 1). It was however, cited and referenced extensively in the Complaint. (See, e.g. Docket No. 1 at ¶8, ¶16,¶21, ¶22, ¶25, ¶29, ¶32). Accordingly, it can be considered part of the Complaint. "When the factual allegations of a complaint revolve around a document whose authenticity is unchallenged, that document effectively merges into the pleadings. . ." Young v. Lepone, 305 F.3d 1, 11 (1st Cir. 2002) (internal citation and quotation marks omitted); see also Wright & Miller, 5B Fed. Prac. & Proc. Civ.  §1357 3d ed. 2004 & Supp.2007.  The JVA is attached as Exhibit 1.

The Verified Complaint alleges in Paragraph 10 that the JVA "involves the operation and management of ocean going vessels in international trade." (Docket No. at ¶10). A review of the actual JVA may reveal why Plaintiff failed to attach the JVA—it does not involve the operation and management of vessels. To the contrary, the JVA is merely a shareholder agreement creating the operating rules for a joint venture. The purpose of the JVA is clearly stated in

recitation paragraph "M" of the JVA: "… this Agreement regulates the operation and management of the Company and the relationship between its Shareholders."  (See Ex. 1 at 6, ¶M).

A review of the JVA reveals its true substance.  Under Section 5[2] "Business of the Company", §5.1 sets forth the non-maritime nature of this agreement:

> The Parties agree that the primary objects of the Company shall be *to purchase the shares in the capital stock of each of the Subsidiaries* on the terms and subject to the conditions of the Share Sale Agreements and *to own, manage and direct the Subsidiaries*, as prospective owners of the Vessels as of completion of construction by the Builder and sale and delivery by the Seller.  The business of the Company shall be the fulfilment of the above objects.

(Emphasis added).

The JVA is not concerned with the operation of any vessel, but instead with the acquisition and chartering of vessels to be operated by others.  (See Exhibit 1 at 4, ¶A).  The JVA describes a new company, "Dry Bulk Handy Holdings Inc," that Plaintiff and Defendant Corvina will co-own.  (Id. at ¶(B)).  The JVA addresses the procedure by which both owners will obtain their shares in the new company.  (Id. at 9-10, §3).  It establishes the new company's board of directors.  (Id. at 10-11, §4).  It describes the necessary shareholder meetings to operate the company.  (Id. at pg. 13-15, §6).  Other than a brief mention that the two shareholders agree to delegate operation of vessels to third parties in §5.3 and §16, the JVA has nothing to do with "the operation and management of ocean going vessels in international trade."

Tellingly, it is not the JVA's §5.3 or §16 that is the subject of Plaintiff's claims, but is instead §9 that is outlined in the Complaint.  (Docket No. 1 at ¶16).  That Section is entitled

---

[2] An addendum to the JVA subsequently added an additional paragraph (§5.5) that created yet another operating subsidiary to charter Handymax/Panamax carriers.  The Addendum is attached as Exhibit 2, and does not alter the non-maritime nature of the JVA.

"Shareholders' Advances/Contributions." (Ex. 1 at 16).  That section has nothing to do with the operation of a vessel in international trade; it simply describes how the shareholders must contribute to the joint venture.  Although not a "legal" partnership, the JVA is in substance similar to a partnership agreement between its signatories to operate a co-owned company.  (Id. at §17).

## ADMIRALTY LAW DOES NOT GOVERN AGREEMENTS BETWEEN PARTIES TO JOINTLY ENGAGE IN BUSINESS, EVEN IF IT IS A MARITIME BUSINESS

Since the 1850s, it has been clear that such an agreement to operate a business is not subject to the Court's admiralty jurisdiction.  In The Detroit, 63 U.S. 330, 334, 16 L. Ed. 249 (1859) the United States Supreme Court held that an agreement between parties to run a maritime business was not a maritime contract.  The parties in The Detroit jointly agreed to operate the steamboat Detroit, with one party contributing the vessel and the other his operational knowledge of the vessel.  The Court held that if the two parties of the contract joined together to run the business, and if the profits were to be split between the participants, no admiralty jurisdiction exists.  Id. at 334.  "Of such a contract, a court of admiralty has no jurisdiction."  Id.; see also Turner v. Beacham, 24 F. Cas. 346, 348 (C.C.D. Md. 1858) ("[A] contract to form a partnership to purchase a vessel, or to purchase anything else, is certainly not maritime; a court of admiralty has no right to decide whether such a contract was legally or equitably binding, nor to adjust the accounts and liabilities of the different partners. These questions are altogether outside of the jurisdiction of the court;").

The holding in The Detroit was not an anomaly; the Court held similarly just three years earlier in Vandewater v. Mills, Claimant of Yankee Blade, 60 U.S. 82, 92, 15 L. Ed. 554 (1856)

In <u>Vandewater</u>, the Court explained that merely because a business venture is maritime in nature, does not create admiralty jurisdiction.  As the Court explained:

> This is nothing more than an agreement for a special and limited partnership in the business of transporting freight and passengers between New York and San Francisco, and the mere fact that the transportation is by sea, and not by land, will not be sufficient to give the court of admiralty jurisdiction of an action for a breach of the contract. It is not one of those to which the peculiar principles or remedies given by the maritime law have any special application, and is the fit subject for the jurisdiction of the common-law courts.

The holdings in <u>The Detroit</u>, and <u>Vandewater</u> are consistent with the Fourth Circuit's case law on maritime contracts.  For example, the Fourth Circuit rejected the "maritime" nature of a contract where it was "a contract made on land, to be performed on land."  <u>Slavchev v. Royal Caribbean Cruises, Ltd.</u>, 559 F.3d 251, 255 (4th Cir. 2009).  In <u>Slavchev</u>, the Fourth Circuit also cited with approval <u>Clinton v. Int'l Org. of Masters, Mates & Pilots of Am., Inc.</u>, 254 F.2d 370, 371 (9th Cir. 1958) which rejected the idea that the interpretation and enforcement of corporate governance documents was "maritime" just because the purpose of the organization was maritime.  In <u>Clinton</u>, the Ninth Circuit refused admiralty jurisdiction when asked to interpret the by-laws and constitution of the local maritime labor organization.

The holdings of <u>The Detroit</u>, and <u>Vandewater</u> have been more recently reiterated by lower courts considering similar issues.  <u>Economu v. Bates</u>, 222 F. Supp. 988 (S.D.N.Y. 1963) is quite similar to the present case.  The Court describes the relevant contract as "an agreement whereby libelants were to contribute to the financing and to become co-owners with respondents on an equal basis of a vessel yet to be purchased."  <u>Id.</u> at 989. The Court explained that "The basic agreement is one of joint enterprise between the libelants and the respondents, and the fact that it may be carried on nominally in corporate form does not affect its essential character."  <u>Id.</u>

Relying upon The Detroit[3] and a series of other cases, the Court notes that "an agreement to enter into a joint venture or partnership to operate a vessel was not a maritime agreement." Economu v. Bates, 222 F. Supp. at 992.

Similarly, the Southern District of New York found it lacked jurisdiction to determine the obligations between joint venturers.  In The Managua, 42 F. Supp. 381, 382 (S.D.N.Y. 1941) the court explained:

> The subject matter of the action is not one of a maritime nature. It is clear that it is brought to set aside the sale of four steamships . . . [i]t clearly involves a partnership dispute cognizable in equity, and not in admiralty. . . the main purpose is to settle a partnership dispute. . . [t]he libel is dismissed and the monition quashed and the ship 'Managua' released from the custody of the Marshal.

And, the Eastern District of Louisiana quashed a Rule D arrest by a purported 50% owner of a vessel in Coutsodontis v. M/V ATHENA, 2008 WL 4330236 at *1,  finding that there was no admiralty jurisdiction to determine the rights of the co-venturers.

Plaintiff's Verified Complaint seeks the relief explicitly denied in The Detroit and the related case law.  The JVA is only an agreement between two co-venturers for the operation of a business.  As in The Detroit, the JVA provides how the co-venture will operate, and that the co-venturers will divide profits from the venture.[4]  It is not a maritime contract.

If Plaintiff's position that the JVA was a "maritime contract" was correct, it would expand the Court's admiralty jurisdiction beyond its traditional boundaries.  Every shareholder

---

[3] Which the Court refers to as Ward v. Thompson.

[4] See, .e.g Exhibit 2 at 4, ¶2.3 "The Parties hereby agree that between themselves they will share, up to their equity contributions in the Company or other commitments thereto in all profits and/or losses. . ."

dispute involving a maritime company would be within the Court's admiralty jurisdiction.  The

Court would need to apply the general maritime law to determine whether shareholder meetings

were timely held; to whether majority shareholders "froze out" minority shareholders; to whether

the articles of incorporation of a maritime company were adequate.  There is no "general

maritime law" for these issues because U.S. courts have never considered corporate governance

of maritime companies within the Court's admiralty jurisdiction.

<u>THE JOINT VENTURE AGREEMENT REJECTS PLAINTIFF'S CONTENTIONS
EXPLICITLY IN SECTION 9.6</u>

Plaintiff's troubling decision not to provide the Court a copy of the contract that Plaintiff

claims gives this Court jurisdiction becomes clear when the section relevant to the dispute is

read. Plaintiff had to paraphrase rather than quote the relevant section because §9.6 explicitly

contradicts Plaintiff's position.

Plaintiff relies upon §9.6 to state its claim against Corvina.  (Docket No. 1 at ¶16).

Plaintiff claims that §9.6 requires Corvina to provide guarantees.  (<u>Id.</u>).  But Plaintiff fails to

quote the first sentence of §9.6 that provides:

> Neither Shareholder (nor any member of its respective Group)
> shall be obligated to participate for the benefit of the Company
> whether as guarantor or in any other capacity whatsoever in any
> guarantee, bond or financing arrangement with any bank or
> financial institution, and/or any performance guarantee in favour of
> third parties guaranteeing the performance of the obligations of the
> Company.

The JVA explicitly provides that Corvina cannot be obligated to participate in the very

guarantees that Plaintiff claims Corvina is obligated to participate in.

Although omitting this crucial language from the Complaint, Plaintiff does include in its

allegations that Corvina would only need to execute guarantees if "both [Plaintiff] and

10

[Defendant Corvina] agree that both or either of them . . .provide any guarantee." (Docket No. 1 at ¶16, describing JVA §9.6). The Complaint, then, even under Plaintiff's theory must adequately allege that Defendant Corvina <u>agreed</u> that a guarantee should be issued. (<u>Id.</u>). But Plaintiff never makes an allegation that Defendant Corvina agreed that a performance guarantee should be issued. (<u>Id.</u>, *passim*). In the absence of such an allegation, Plaintiff has failed to plead with the particularity required of Rule E(2)(a), and therefore has not adequately pled a claim.

<u>PLAINTIFF HAS FAILED TO PLEAD ANY FACTS SUFFICIENT TO SUPPORT ITS ASSERTION THAT LIMARI IS AN ALTER EGO OF CSAV</u>

In addition to Plaintiff's alleged cause of action not arising within this Court's maritime jurisdiction, and being contradicted by the explicit text of the JVA, Plaintiff's has attached a vessel that is owned by a third party.

Plaintiff knows the M/V LIMARI is owned by Limari Shipping Ltd. Plaintiff's own Complaint alleges that "the LIMARI's registered owner is Limari Shipping Ltd." (Docket No. 1 at ¶79). The registered owner of property is the owner. <u>Bunkers Int'l Corp. v. Carreira Pitti, P.C.</u>, 1:11CV803 LMB/IDD, 2012 WL 996855 (E.D. Va. Mar. 22, 2012) (Dismissing a Rule B attachment because Plaintiff failed to provide any evidence to rebut the fact that the Defendant was not the registered owner of a domain name).

To properly seize and attach the M/V LIMARI for claims against Defendant Corvina and Defendant CSAV, Plaintiff would need to prove that Limari Shipping Ltd. is an alter ego of the Defendants. <u>See</u> <u>Mason Agency Ltd. v. Eastwind Hellas SA</u>, 09 CIV. 6474 (DLC), 2009 WL 3109821 (S.D.N.Y. Sept. 29, 2009) (analyzing claims that one company was a "beneficial owner" of a vessel relying upon alter ego case law). Plaintiff's allegations, even if true, are insufficient to establish that Limari Shipping Ltd. is an alter ego of either defendant.

11

"[A] corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as 'piercing the corporate veil.'"[5]  Vitol, S.A. v. Primerose Shipping Co. Ltd., 708 F.3d 527, 543 (4th Cir. 2013).  "This power to pierce the corporate veil, though, is to be exercised "reluctantly" and "cautiously" and the burden of establishing a basis for the disregard of the corporate fiction rests on the party asserting such claim." DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co., 540 F.2d 681, 683 (4th Cir. 1976).  Disregarding the corporate form should only occur when appropriate factors support piercing the corporate veil.  Those factors include "gross undercapitalization of the subservient corporation; failure to observe corporate formalities; nonpayment of dividends; siphoning of the corporation's funds by the dominant corporation; non-functioning of officers and directors; absence of corporate records; and the fact that the corporation is merely a facade for the operation of the dominant stockholder or stockholders."  Keffer v. H.K. Porter Co., Inc., 872 F.2d 60, 65 (4th Cir. 1989).  Those factors apply to maritime attachments.  Vitol, S.A. v. Primerose Shipping Co. Ltd., 708 F.3d at 544 (4th Cir. 2013) (citing Keffer).

The Court may properly vacate an attachment when the Verified Complaint fails to adequately plead facts necessary to demonstrate a reasonable belief to support the claim of alter ego.  See Vitol, S.A. v. Primerose Shipping Co. Ltd., 708 F.3d at 545.  There are no adequately plead facts in Plaintiff's Complaint.

Plaintiff dedicates only ten paragraphs of the Complaint to establish ownership of the M/V LIMARI by Defendants.  (Docket No. 1 at ¶ 75-84).  Two of those paragraphs (¶75, ¶84)

---

[5] The terms "alter ego" and "piercing the corporate veil" are used interchangeably as they refer to the same legal concept.  See, e.g., Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC, 851 F. Supp. 2d 504, 509 (S.D.N.Y. 2012)("In order to "pierce the corporate veil" under the federal common law standard, a plaintiff must show that an alter ego was used . . .")

are mere legal conclusions of ownership without any facts, and are irrelevant to the analysis as

mere conclusions.  Vitol, S.A. v. Primerose Shipping Co. Ltd., 708 F.3d at 546 (4th Cir. 2013).

Three of the remaining allegations relate only to 2007, six years prior to Plaintiff's attempt to

pierce the corporate veil.  (Docket No. 1 at ¶76-78).  And one of those paragraphs explicitly

admits that when the vessel was delivered, its ownership was transferred to a joint venture

involving a third party.  (Id. at 77).   Two of those paragraphs merely allege, without any

explanation or definition, that companies related to the M/V LIMARI are "associate" companies

of Defendant CSAV.  (Id. at ¶80, ¶82).  Of the remaining three paragraphs, two only allege that a

single officer and director is shared by the various companies.  (Id. at ¶81, ¶83).  And the

remaining paragraph explicitly alleges that Limari owns the M/V LIMARI.  Put simply, that

companies are "associated" and share one officer/director is not sufficient to treat Limari as an

alter ego of CSAV.

Plaintiff has not alleged any of the requirements that would support piercing the

corporate veil.  Plaintiff has not alleged any gross undercapitalization of Limari.  See Keffer v.

H.K. Porter Co., Inc., 872 F.2d at 65.  Plaintiff has not alleged any failure by Limari to observe

corporate formalities.  Id.  Plaintiff has not alleged any siphoning of Limari's funds by CSAV.

Id.  Plaintiff has not alleged any non-functioning of officers and directors of Limari.  Id.  Plaintiff

has not alleged any absence of Limari corporate records.  Id.   Plaintiff has alleged nothing that

would supports is claim that CSAV is the actual owner of the M/V LIMARI.

### THE ATTACHMENT OF THE VESSEL WAS IN GROSSLY NEGLIGENT OR IN BAD FAITH AND CLAIMANT IS ENTITLED TO FEES AND COSTS.

As explained above, the Joint Venture Agreement is a corporate governance document

that is far outside the jurisdiction of an admiralty court.  There is no admiralty jurisdiction to

interpret an agreement between co-venturers to operate a maritime business.  For more than a century, this has been clear and undisputed in the case law.

<u>Claimant is entitled to attorneys' fees and costs incurred as a result<br>of Plaintiff's wrongful attachment of the M/V Limari</u>

It is an established principle of maritime law that one who suffers a wrongful attachment may recover damages from the party who obtained the attachment.  <u>See</u> <u>Furness Withy (Chartering), Inc., Panama v. World Energy Systems Associates</u>, Inc., 854 F.2d 410 (11th Cir. 1988).  A party has the right to recover damages for wrongful arrest or seizure in admiralty on a showing of "bad faith, malice, or gross negligence." <u>Tennyo Maritime Inc. v. Norsk Hydro S.S.</u>, 1994 WL 279849, 1994 AMC 2687, 2689 (E.D. La. 1994). In order to collect attorneys' fees, the claimant must prove that the party seizing the vessel acted in bad faith with malice or with wanton disregard for the rights of his opponent. <u>Cardinal Shipping Corp. v. MIS Seisho Maru</u>, 744 F.2d 461, 474 (5th Cir. 1984).

Here, Plaintiff acted in bad faith and with wanton disregard for the rights of Limari Shipping Ltd. by attaching the M/V LIMARI without a legal basis.  As explained above, this dispute centers on the terms of a corporate shareholder agreement that by clear precedent falls outside the scope of admiralty jurisdiction. The JVA in no way involves the operation and management of a vessel; it deals with the corporate governance of a new company.  The JVA establishes the new company's board of directors, describes the necessary shareholder meetings to operate the company, and describes how the shareholders must contribute to the joint-venture. The case law clearly establishes that this type of agreement does not fall within the scope of admiralty jurisdiction.

Moreover, the JVA, which was not attached to the Verified Complaint, by its own terms contradicts representations made in the Verified Complaint: The JVA not only is not a vessel management agreement as alleged, but by its terms identifies the third party with whom the joint venture will contract for vessel management services. (<u>See</u> Exhibit 1 at 12, §5.3). In addition, by the explicit terms of § 9.6, the JVA does not require the parties to the JVA to provide guarantees as alleged. To the contrary, it specifically provides that the parties cannot be required to provide guarantees absent their agreement.

Finally, the Plaintiff seized a vessel that is admittedly owned by a third party by suggesting, without specifically alleging, that Limari is an alter ego of CSAV based solely on the fact that it is an "associate" company of CSAV and the two companies share one officer.

As a result, Limari has incurred expenses, costs, and attorneys' fees. Limari respectfully requests this court to award it the attorneys' fees and costs it incurred moving to quash the attachment of the M/V/ LIMARI.

<u>LIMARI CLAIMS AN INTEREST IN THE M/V LIMARI AND IS ENTITLED TO AN
EXPEDITED HEARING PURSUANT TO ADMIRALTY RULE E(4)(F)</u>

Supplemental Rule E(4)(f) for Admiralty and Maritime Claims provides in pertinent part:

Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

Limari Shipping Ltd is the proper owner of the M/V LIMARI. It therefore has an interest in the M/V LIMARI subject to rule E(4)(f). Accordingly, Limari requests an expedited hearing on its Motion to Quash the Attachment and Garnishment of the M/V LIMARI pursuant to Rule E(4)(f).

Respectfully Submitted,

LIMARI SHIPPING LTD.

By:   /s  Mark T. Coberly
Mark T. Coberly, Esq. (VSB No. 18136)
Dustin M. Paul (VSB No. 75287)
VANDEVENTER BLACK LLP
500 World Trade Center
Norfolk, VA 23510
Telephone:  (757) 446-8600
Facsimile:  (757) 446-8670
Email:  mcoberly@vanblk.com

*Counsel for Limari Shipping Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of December, 2013, I electronically filed the foregoing with the Clerk of Court using the CMECF system, which will then send notification of such filing (NEF) to the following:

Philip N. Davey
pdavey@daveybroganpc.com
Patrick M. Brogan
pbrogan@daveybroganpc.com
Christopher N. Harrell
charrell@daveybroganpc.com
DAVEY & BROGAN, P.C.
101 Granby Street, Suite 300
Norfolk, VA 23510

*Counsel for Plaintiff*

By:   /s  Mark T. Coberly
Mark T. Coberly, Esq. (VSB No. 18136)
Dustin M. Paul (VSB No. 75287)
VANDEVENTER BLACK LLP
500 World Trade Center
Norfolk, VA 23510
Telephone:  (757) 446-8600
Facsimile:  (757) 446-8670
Email:  mcoberly@vanblk.com

*Counsel for Limari Shipping Ltd.*

4822-9398-9143, v.  1

16