# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
### <u>Norfolk Division</u>

DRY HANDY INVESTMENTS LTD.,

        Plaintiff,

                             Civil Action No. 2:13 cv 678

v.

CORVINA SHIPPING CO. S.A.

and COMPANIA SUD AMERICANA DE

VAPORES S.A.,

        Defendant.

## <u>DECLARATION OF SHAW</u>

Exhibit 5L – Charterparties

FIRST ORIGINAL



# Time Charter

**GOVERNMENT FORM**

*Approved by the New York Produce Exchange*

November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

## This Charter Party, made and concluded in *Monaco* ...............19th....................... day of ...........*August* ........ 19 2010

1

2 Between *SANZO ENTERPRISE CO., LTD, Tokyo, Japan or its guaranteed nominee*

3 Owners of the good ........ Steamship/Motorship *Mitsui Hull No. 1845 about 56,000 dwt grab fitted Bulk Carrier to be built at Tamano or Chiba Works of Mitsui Engineering & Shipbuilding Co., Ltd. TBN. (the vessel, upon completion, shall be registered in the country of the Flag of Convenience, or Hong Kong at the Owner's option) of See Clause 29.*

4 of ...................................................... ~~tons net register, having engines of~~ .................................... ~~indicated horse power~~

5 ~~and with hull, machinery and equipment in a thoroughly efficient state, and classed~~

6 ~~at~~ ........................................................ ~~cubic feet bale capacity, and about~~ ...*see Clause 29*..... ............ ~~tons of 2240 lbs.~~

7 ~~deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one-half percent of ship's deadweight capacity,~~

8 ~~allowing a minimum of fifty tons)~~ on a draft of ...*see Clause 29* feet ............... ~~inches on~~ .................Summer freeboard, inclusive of permanent bunkers,

9 which are of the capacity of about .......................... tons of fuel, and capable of steaming, fully laden, under good weather

10 ~~conditions about~~ ........................ ~~knots on a consumption of about~~ ............... ~~tons of best Welsh coal - best grade fuel oil - best grade Diesel oil.~~

11 now ..*during the currency of this Charter Party as set in Clause 29*...

12 ...*and Dry Bulk Handy Holding Inc. .. Charterers of the City of Panama or its guaranteed nominee, always guaranteed by Drylog Ltd. of Bermuda.*

## Witnesseth, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for

13 about .......*seven (7) years after the delivery with 30 days more or less in the Charterers' option. In addition to this period, the Charterers*

14 *have an option to extending three (3) times of three (12) months each. In case the Charterers exercise their option to extend each*

15 *twelve (12) months, adjustable period of thirty (30) days more or less shall only be applied one time at the very end of the whole charter period. Optional period is to be declared minimum ninety (90) days prior to expiry of the preceding charter period.* within below mentioned trading limits.

16 Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for

17 the fulfilment of this Charter Party.

18 Vessel to be placed at the disposal of the Charterers, at *on dropping dock master at Builder's yard sometime between 1st January, 2013 and*

19 *31st December 2013 at Owner's option - to be narrowed to a six (6) month spread latest by 1st January 2012 and to a three (3) month spread latest by 1st July 2012.*

20 ~~in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6), as~~

21 ~~the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No. 5.~~ Vessel on her delivery to be clean on arrival at loading port, for Charterers' intended cargo.

22 ~~ready to receive cargo with clean swept holds and tight, staunch, strong and in every way fitted for the service, having water ballast, winches and~~

23 ~~donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same~~

24 ~~time~~ (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-

25 dise, ~~including petroleum or its products in proper containers,~~ excluding .....*See Clause 46*

26 ~~(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk~~

27 all necessary fittings and other requirements to be for account of Charterers, in such lawful trades, between safe port and/or ports in British North
28 America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or
29 Mexico, and/or South America

30 and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between
31 October 31st and May 15th, Hudson Bay and all unsafe ports, the excluding when out of season, White Sea, Black Sea and the Baltic,
32 *Worldwide trade via safe port(s), safe berth(s), safe anchorage(s), always afloat, except as per lines 68/70 always within INL -*
33 *International Navigating Limits (formerly known as Institute of Warranty Limits) - See Clause 56* ————

34
35 as the Charterers or their Agents shall direct, on the following conditions:
36    1.   That the Owners shall provide and pay for all provisions, wages and consular shipping and discharging fees of the Crew, shall pay for the
37 insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, *all garbage removal* including boiler water *and fresh*
38 *water (except for hold cleaning - See Clause 61)* and maintain her class and keep
    the vessel in a thoroughly efficient state in hull, machinery and equipment *with inspection certificates necessary to comply with requirements at*
    *port of call* for and during the service.

39    2.   That the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, *Canal and River Tolls, compulsory*
    *Pilotages (customary Pilotages, if used, to be equally shared between Owners and Charterers),* Agencies, Commissions,
40 Consular Charges (except those pertaining to the Crew *and flag of the vessel*), and all other usual expenses except those before stated, but when the
    vessel puts into
41 a port for causes for which *Owners are* vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of
42 illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited *and canal transitted* while vessel is
    employed under this
43 charter to be for Charterers account. All other fumigations to be for Charterers account after vessel has been on charter for a continuous period
44 of six months or more.

45    Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but
46 Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards
47 for dunnage, they making good any damage thereto.
48    3.   That the Charterers at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on
49 board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than ————————— tons and not more than
50 ————————— tons and to be re-delivered with not less than ————————— tons and not more than ————— *See Clause 37.* tons.
51    4.   That the Charterers shall pay for the use and hire of the said Vessel at the rate of *See Clause 44.* ————————————————————————————————
52 ——————————————————————— United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and
53 stores, on ——————————— summer freeboard, per Calendar Month, commencing on and from the day *and hour of her* delivery, as aforesaid, and at
54 and after the same rate for any part of a *day* month, hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary
55 wear and tear excepted, to the Owners (unless lost) at *on dropping outward sea pilot one (1) safe port within following ranges in Charterers'*
56 *option any time day, night, Sundays and holidays included: Aden/passing Muscat outbound/India/Singapore/Japan range including*
    *Philippines, Republic of China, People's Republic of China, Indonesia, South Korea, Skaw/Mediterranean Turkey range including UK,*
    *Eire and Black Sea, Gibraltar/Durban range, Boston/Buenos Aires, Vancouver/Valparaiso range.* unless otherwise mutually agreed.
    Charterers are to give Owners not less than *30/20/15/7/5/3 days approximate and 2/1 days definite*
57 notice of vessels expected date of re-delivery, and probable port. *Charterers to keep Owners well informed if any changes in expected redelivery*
    *date.*

58    5.   Payment of said hire to be made *to an account in Tokyo* in New York in cash in United States Currency, semi-monthly in advance (*See*
    *Clause 44*), and for the last half month or
59 part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance *expected* day by day, as it
    becomes
60 due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the
61 hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-



MAERSK BROKER (UK) LTD · SHIPBROKERS · LONDON

62 terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers, *(otherwise as per Clause 41)Charterers to deduct from any hire payment(s) any amount disbursed for Owners' account with Owner's prior consent as supported by vouchers or necessary proof and from final payment(s) the estimated cost of bunker remaining on board, together with the estimated amount of disbursement for Owners' account for which the vouchers have not yet been received.* ~~Time to count from 7 a.m. on the working day~~
63 ~~following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they~~
64 ~~to have the privilege of using vessel at once, such time used to count as hire.~~
65 Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject
66 to *1.25%* ~~2 1/2%~~ commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the
67 application
 of such advances.
68 6. That the cargo or cargoes be laden and/or discharged in any *safe* dock or at any *safe* wharf or *safe* place that Charterers or their Agents may
69 direct, provided the vessel can safely lie always within *INL - International Navigating Limits (formerly known as Institute of Warranty Limits)* ~~at~~ any time or tide, except *at Brazil, River Plate and Argentina, Uruguay* ~~at such places~~ where it is customary for similar size vessels
 to safely
70 lie aground. *However, Charterers have the right to request vessel to break INL - International Navigating Limits (formerly known as Institute of Warranty Limits) with Owner's prior consent and Owners are to consider such requests on a case by case basis. Vessel not to force ice or follow ice breakers.*

71 7. That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably *and safely* stow and carry),
 also
72 accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,
73 tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the privilege of passengers as far as accommodations allow. Charterers~~
74 ~~allow Owners .................... per day per passenger for accommodations and meals. However, it is agreed that in case any first class extra expenses are~~
75 ~~incurred in the consequences of the carriage of passengers, Charterers are to bear such risk and expense.No passengers on board~~
76 8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with *vessel's* ~~ship's~~ crew and
77 boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and
78 agency; and Charterers are to load, stow, *lash, unlash, tally, secure and discharge* and trim the cargo at their expense under the supervision *and direction* of the Captain, who is to sign Bills of Lading for
 cargo as presented, in conformity with Mate's or Tally Clerk's receipts *without prejudice to this Charter Party.*
79 9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on
80 receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.
81 10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted
82 with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the
83 rate of *$10.00* per day. Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally
84 Clerks, Stevedore's Foreman, etc., ~~Charterers paying at the current rate per meal, for all such victualling~~ *See Clause 44.*
85
86 11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the
87 Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-
88 terers, their Agents or Supercargo, when required, with a true copy of daily Logs, showing the course of the vessel and distance run and the con-
89 sumption of fuel.
90 12. That the Captain shall use diligence in caring for the ventilation of the cargo.
91 ~~13. That the Charterers shall have the option of continuing this charter for a further period of~~ ..........................................................................................
92 ..................................................................................... ~~days previous to the expiration of the first named term, or any declared option.~~
93 ~~on giving written notice thereof to the Owners or their Agents~~ .....................................................................................................................
94 14. That if required by Charterers, time not to commence before *1st January 2013*. ...................................... and should vessel
95 not have given written notice of readiness on or before *31st December 2013* ..................................... but not later than *24/00 hours/4 p.m.* Charterers or
96 their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness. *Owners to narrow to a six (6) month*



*spread latest by 1st January 2012 and to a three (3) month spread latest by 1st July 2012. Should the completion of the vessel be delayed due to a cause directly attributable to force majeure at the shipbuilding yard during construction, the cancelling date under this charter party shall be postponed for the number of days of the delay.*

97

15. That in the event of the loss of time from deficiency of men *including strike of Master/Officers and crew* or stores, fire, breakdown or damages to hull, machinery or equipment,

98

grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause *whatsoever* preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost; and if upon the voyage the speed be reduced by

99

defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence thereof, and all extra expenses shall be deducted from the hire.

100
101

16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas, Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

102
103
104
105

The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the purpose of saving life and property, *in which case all costs shall be the Owners' and Charterers' equal share.*

106
107

17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at *London—New York,* one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial/*shipping* men, *who are members of London Maritime Arbitration Association. See Clause 89*

108
109

18. That the Owners shall have a lien upon all cargoes, and all sub-freights for any amounts due under this Charter, including General Average contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the owners in the vessel.

110
111
112
113

19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and Crew's proportion. General Average shall be adjusted, stated and settled *in London,* according to Rule 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of

114
115

York-Antwerp Rules 1974 *as 1994 and subsequent amendments, if any* 1924, at such part or place in the United States as may be selected by the carrier and as to matters not provided for by these

116

~~Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign currencies shall be exchanged into~~
~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at~~
~~the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or~~
~~bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier~~
~~or his agents may deem sufficient to additional security for the contribution of the goods and for any salvage and special charges thereon, shall if~~
~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the~~
~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the~~
~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in~~
~~United States money.~~

117
118
119
120
121
122
123
124
125

~~In the event of accident, danger, damage or disaster, before or after commencement of the voyage, resulting from any cause whatsoever,~~
~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the~~
~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average in the payment of any sacrifices,~~
~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the~~
~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~
~~ships belonged to strangers.~~

126
127
128
129
130
131

Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.

132

20. Fuel used by the vessel while off fire, also for cooking, condensing water, or for grates and stoves to be agreed to as to quantity, and the cost of replacing same, to be allowed by Owners.

133
134

~~21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a~~
~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from~~

135
136

137
138
139
140

~~time of last raising, and payment of the hire to be suspended until she is again in proper state for the service.~~

141
142

22.   Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks) capable of handling lifts up to *their maximum capacity in accordance with th description clause* ~~there tons, also providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for same, otherwise equipment and gear for heavier lifts shall be for Charterers' account.~~ Owners also to provide on the vessel *power and electric light on deck in cargo holds sufficient for work in all holds simultaneously* ~~beams and oil for~~

143
144
145

~~night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers'~~ expense. The Charterers to have the use of any gear on board the vessel.

23.   Vessel to work night and day, if required by Charterers, and all winches *cranes and grabs* to be at Charterers' disposal during loading and discharging;

146
147
148
149
150

~~steamer to provide one winchman per hatch to work winches day and night, as required. Charterers agreeing to pay officers, engineers, winchmen, deck-hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's article. If the rules of the port, or labour unions, prevent crew from driving winches, shore Winchmen to be paid by Charterers. In the event of a disabled winch or winches, or insufficient power to operate winches, Owners to pay for these engine, or engines, in lieu thereof, if required and pay any loss of time occasioned thereby. In the event of a disabled crane or crane(s) and grab(s), or insufficient power to operate cranes and grabs, charter hire to be reduced pro-rata for the period of such inefficiency in relation of the number of hatches workable, and Owners have to pay any extra costs including standby time, but maximum one shift for shore labour. Charterers have the option to hire shore appliances to continue and for which Owners to pay but Vessel in this case remaining on-hire. If vessel is detained as a result of a disabled crane(s) or grab(s), which detention would not have occurred had the crane(s) or grab(s) been available and efficient at all times, Vessel to be off hired. In the event of a break down of crane(s) or grab(s) due to proven negligence or rough handling by stevedores, the Vessel to remain on hire during any time spent for their repair and until cargo work is resumed. Any such repair shall be settled in accordance with Clause 30.*

151
152
153
154

U. S. A. Clause Paramount (See Clause 62)

~~24.   It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels, etc.", in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, both of which are to be included in all bills of lading issued hereunder:~~

155
156
157
158
159
160

Both-to-Blame Collision Clause (see Clause 62)

~~This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~

161
162
163
164
165
166

~~If the ship come into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier.~~

167
168
169
170

25.   The vessel shall not be required to enter any ice-bound port, or any port where lights or light-ships have been or are about to be withdrawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the port or to get out after having completed loading or discharging.

26.   Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the navigation of the vessel, *acts of pilots and tugboats,* insurance, crew, and all other matters, same as when trading for their own account.

171
172
173

~~27.   A commission of 2 1/2 per cent is payable by the Vessel and Owners to~~
*Time charter hire described is including 1.25% brokerage for MAERSK BROKER ASIA LIMITED, no address commission to the Charterers See Clause 44*



174  on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

175      28. ~~An address commission of 2 1/2 per cent payable to ..................................... on the hire earned and paid under this Charter.~~ Clauses 29 to 95 both inclusive as attached, Annex "A" and Annex "B" as attached, are considered to be fully incorporated in this Charter Party.

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of Ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.

THE OWNERS:

Sanzo Enterprise Co., Ltd. of Japan
Signatory: Takao Shinoyama
Position : President

THE CHARTERERS:

Dry Bulk Handy Holding Inc. of Panama
Signatory: Ilias Iliopoulos
Position : Director

FIRST ORIGINAL

RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

29    Description of vessel

One grab fitted Bulk Carrier of about 56,000 dwt to be built at Tamano or Chiba Works of Mitsui Engineering & Shipbuilding Co., Ltd.

The Vessel is to be constructed generally in accordance with the Builder's standard, specification and practice based on the Outline Specifications as below.

All details about.

KOST-HMAX-123

Mitsui Engineering & Shipbuilding Co., Ltd. 56,000 mtdw Bulk Carrier
Outline Specifications

Hull

| | |
|---|---|
| Vessel name: | TBN (Mitsui Hull No. 1845) |
| Class: | NK |
| Port of Registry: | Panama |
| LOA: | max. 189.99m |
| LPP: | 182.00m |
| Breadth (mld): | 32.25m |
| Depth (mld): | 18.10m |
| Draft mld (design): | 11.20m |
| Draft mld (scantling): | 12.69m |
| Deadweight (design): | Approx. 47,600 metric tons |
| Deadweight (scantling): | Approx. 55,900 metric tons |
| Gross Tonnage: | Approx. 32,000 (international) |

Capacity

| | |
|---|---|
| Cargo Holds: | Approx. 71,200 m3 (grain) |
| Fuel Oil Tanks: | Approx. 2,150 m3 (incl. Sett. & Serv. Tanks) |

Machinery

| | |
|---|---|
| Main Engine: | Mitsui MAN B & W 6S50MCC (Mark 7) |
| MCR: | 9,480 kW x 127 min$^{-1}$ |
| NSR: | 7,080 kW x 115.2 min$^{-1}$ |

1

RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

| | |
|---|---|
| Diesel Generators: | 480 kW x 900 min$^{-1}$  x 3 sets |
| Speed at NSR in laden condition: | 13.5 knots on mld. draft of 12.69 m (scantling) under good weather condition up to and including BF4. |
| Consumption in laden condition: | 32.4mt/day at NSR of M/E, + 2 mt/day for D/G, using bunker oil of LCV 40.6MJ/kg and based on ISO reference conditions with taking measures to meet the Restriction of NOX Emission required by Annex VI to Marpol 73/78. (Equivalent to 30.8mt/day using bunker oil of LCV: 42.7MJ/kg) |

Port Consumption per 24 hrs - Gear Working/Idle:
Gear Working: approx. 5.3 mt/day and
Idle: approx. 2.8 mt/day

Vessel will use diesel oil in narrow/shallow/busy water areas etc. canals, maneuvering in and out of ports, maneuvering river passages, restricted waters, starting & stopping of engine, SOX emission control areas.

Grade of IFO/MDO:
IFO: ISO-F-RMH380 (380cst@50 deg. c) or equivalent
MDO: ISO-F-DMA, ISO-F-DMB or equivalent
(Emergency generator diesel engine: DMA)

Remarks: Low sulphur IFO & MDO should be supplied and used within the SOX emission control areas according to MARPOL Annex VI and/or zones regulated by regional and/or national authorities such as, but not limited to, the EU and the US/Canada Environmental Protection Agency.

**Holds / Hatches**

| | |
|---|---|
| Number: | 5 holds / hatches |
| Hatch Covers: | Both End folding type |
| Hatch Sizes (approx. length x approx. breadth) | |

<u>RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845</u>
<u>CP DATED 19th AUGUST 2010</u>

| | |
|---|---|
| Number 1: | Approx. 15.7m x Approx. 18.9m |
| Number 2 – 5: | Approx. 21.0m x Approx. 18.9m |
| Ventilation of holds: | natural ventilator at hatch cover side |
| Fire fighting in holds: | sea water system without fire detecting system |

<u>Hull Outfitting</u>

| | |
|---|---|
| Cranes: | 294kN x 26m radius x 4 sets |
| | (294kN is measured to 30t) |
| Grabs: | 4 sets of 12m3 grabs |
| | (Maker & type to be nominated by Owners but always to be a reputable maker in the market like Tobu/Smag) |
| Lumber Fittings: | N/A (not fitted eye plates/sockets of stanchion for package lumber loading) |

<u>Rules & Regulations</u>

- SOLAS 1974 and it's related Protocol of 1978, including Amendments up to 2005 and the following regulations:
  LRIT and PSPC
- MARPOL 1973 as modified by the Protocol of 1978 relating thereto and its Annexs I, IV,V and VI, including Amendments up to 2006
- International Load Line Convention, 1966 and it's related Protocol of 1988 including Amendment up to 2006
- Panama Canal Regulation
- Suez Canal Regulation
- Maritime Rules and Regulations of the flag state
- AMSA (Australian Maritime Safety Authority) for access to cargo holds and crane (with plan approval only)
- USCG Regulations for Foreign Flag Vessels (with declaration of satisfactory provision)

The following rules and regulations, which are not in force as of March 2010, shall be applied for the vessel:

- MARPOL ANNEX VI Reg.13 Nitrogen Oxides (Nox), Tier II

3



RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

(MEPC.176(58))
- International Code on Intact Stability, 2008 (Part A)
- International Maritime Solid Bulk Cargoes Code

The following rule and regulation shall not be applied for the vessel;
- The Hong Kong International Convention for the Safe and
  Environmentally Sound Recycling of Ships, 2009
- Maritime Labour Convention, 2006
- International convention for the control and management of ship's
  ballast water and sediments, 2004

30    Stevedore Clause

The stevedore, although appointed and paid by Charterers / Shippers /
Receivers and /or their Agents, to remain under the direction and control of
the Master who will be responsible for proper stowage and seaworthiness of
this vessel.

Charterers to be responsible for damage caused by negligence of stevedores
in loading and discharging vessel only when such damage is duly
substantiated by the Master's prompt notice of claim served in writing upon
the party responsible as soon as practically possible after occurrence of damage
except in case of hidden damage which to be notified latest on sailing from the
port where the damage occurred/was discovered. Such notice to specify the
damage in details and to invite Charterers to appoint a surveyor to assess the
extent of such damage, if required.

Stevedores' damage report to be issued as soon as possible after discovery and
copy of all correspondence exchanged in this connection must be forwarded
promptly to Charterers. Master shall also cooperate with Charterers or their
Agents to obtain a written acknowledgement of receipt by the responsible party
causing damage, unless the damage should have been made good in the
meantime.

Any stevedore damage affecting seaworthiness to be repaired at the Charterer's

4



expenses and time without delay but Charterers have the option to redeliver the vessel without repairing such stevedores' damage that do not affect the seaworthiness of the vessel or normal working and trading of vessel. Owners agree that damage not affecting seaworthiness or efficiency and safe working of the ship may remain for occasional repair when the ship is to dock for Owners' account so that Charterers to pay the actual cost of repairs of stevedores' damage and additional time used against the production of repair bills by repairers or dock yards, if any.

31    Vessel to work day and night if required by Charterers and to supply lights as on board.

32.   Vessel under present Owners is eligible for bunkers in the United States, its territories and possessions in accordance with United States office of International Trade.

33.   Fumigation required at first loading port on account of the vessel to be done in Owners' time and at their expenses. Fumigation required as a result of cargo carried or local port regulations to be for Charterers' account.

34    Deleted.

35    Should the vessel put back while on voyage by reason of an accident or breakdown, the hire shall be suspended from the time of hire putting back until she again be in the same or equidistant position and the voyage resumed therefrom.

If the vessel is off-hire consecutively for fifty (50) days or more due to any cause(s), the Charterers shall have the option to cancel this Charter Party, without prejudice to any other rights, remedies or claims which the Charterers may have. If the vessel is still undergoing repairs at the end of the 50-day period, but expected to be back in service within a further 50 days, the options to cancel the CP shall be postponed by a further 50 days. If the vessel is still off-hire at the end of the further 50 days, Charterers to have a right to cancel the Charter Party. Such option shall be exercised by the Charterers by giving written notice of cancellation to the Owners and the vessel shall be redelivered



SHIPBROKERS

MAERSK BROKER
(UK) LTD

LONDON

RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19ᵗʰ AUGUST 2010

as soon as practicable thereafter once free of cargo properly and duly discharged
under any applicable contract of carriage.

36    Charterers shall leave the vessel in seaworthy trim and with cargo on board
safely stowed to Master's satisfaction between loading berth/port and between
discharging berth/ports, respectively; any expenses resulting shall be for
Charterers account and any time used shall count.

37    Bunker Clause

The Charterers on delivery, and the Owners on redelivery, shall take over and
pay for all fuel oil and diesel oil remaining on board the vessel as hereunder.
The vessel shall  be delivered with bunkers as on board but always sufficient to
reach nearest bunkering port. The vessel shall be redelivered with bunkers as
on board but sufficient to reach nearest bunkering port. Bunker prices for both
ends to be according to Owners' / Charterers' purchased prices of last supply to
delivery / redelivery with supporting vouchers, Charterers prior to delivery and
Owners prior to redelivery to have the option of bunkering the vessel for their
own account provided same does not interfere with Owners' / Charterers'
operations.

Bunker Quality Clause for Time Chartering

(AA) Applicable for bunkering in Singapore and other bunkering places that
have the same bunkering procedures as Singapore and where crew can attend
the sampling on the barge.

Bunker Quality Control Clause
(1) The Charterers shall supply bunkers of a quality suitable for burning in the
vessels engines and auxiliaries and which conform to the specification(s)
mutually agreed under this Charter.

(2) At the time of delivery of the vessel the Owners shall place at the disposal of
the Charterers, the bunker delivery note(s) and any samples relating to the
fuels existing on board.



RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

(3) During the currency of the charter the Charterers shall ensure that bunker delivery notes are presented to the vessel on the delivery of fuel(s) and that during bunkering representative samples of the fuel(s) supplied shall be taken at the vessels bunkering manifold provided allowed under the terms of the bunker suppliers otherwise as bunker's suppliers terms and sealed in the presence of competent representatives of the Charterers and the vessel.

(4) Procedure for the analysis of the sample to be as per bunker suppliers terms and conditions.

(5) The Owners reserve their right to make a claim against the Charterers for any damage to the main engines or the auxiliaries caused by the use of unsuitable fuels or fuels not complying with the agreed specification(s). Additionally, if bunker fuels supplied do not conform with the mutually agreed specification(s) or otherwise prove unsuitable for burning in the ship's engines or auxiliaries the Owners shall not be held responsible for any reduction in the vessels speed performance and/or increased bunker consumption nor for any time lost and any other consequences.

(BB)Applicable for all other bunkering ports
Standard BIMCO Bunker Quality Clause for Time Chartering' to apply.

BIMCO Bunker Quality Control Clause for Time Chartering
(1) The Charterers shall supply bunkers of a quality suitable for burning in the Vessel's engines and auxiliaries and which conform to the specification(s) mutually agreed under this Charter.

(2) At the time of delivery of the Vessel the Owners shall place at the disposal of the Charterers, the bunker delivery note(s) and any samples relating to the fuels existing on board.

(3) During the currency of the Charter the Charterers shall ensure that bunker delivery notes are presented to the Vessel on the delivery of fuel(s) and that during bunkering representative samples of the fuel(s) supplied shall be taken at the Vessel's bunkering manifold and sealed in the presence of competent representatives of the Charterers and the Vessel.



RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

(4) The fuel samples shall be retained by the Vessel for 90 (ninety) days after the date of delivery or for whatever period necessary in the case of a prior dispute and any dispute as to whether the bunker fuels conform to the agreed specification(s) shall be settled by analysis of the sample(s) by (...) or by another mutually agreed fuels analyst whose findings shall be conclusive evidence as to conformity or otherwise with the bunker fuels specification(s).

(5) The Owners reserve their right to make a claim against the Charterers for any damage to the main engines or the auxiliaries caused by the use of unsuitable fuels or fuels not complying with the agreed specification(s). Additionally, if bunker fuels supplied do not conform with the mutually agreed specification(s) or otherwise prove unsuitable for burning in the ship's engines or auxiliaries the Owners shall not be held responsible for any reduction in the Vessel's speed performance and/or increased bunker consumption nor for any time lost and any other consequences.

38   Should the vessel be on her voyage towards the port of redelivery at the time when payment / payments of hire is/are due, said payments shall be made for such length of time as agreed by Owners and Charterers regarding the time necessary to complete the voyage. Bunkers to be taken over by the vessel and agreed disbursements for   Owners' account and any difference shall be refunded by Owners or paid by Charterers as the case may be.

39   In the event of any of the following countries: U.S.A., Japan, Russia, People's Republic of China becoming engaged as an actual participant in a war or warlike operation with one or more of the other named countries, directly affecting due fulfillment of this Charter, Charterers and/or Owners shall mutually discuss whether it is possible to continue the Performance of the charter party.

40   Deleted.

41   Notwithstanding anything contained herein to the contrary, if at any time hire becomes due on a Saturday, Sunday or a national holiday, or outside normal office hours, payment shall be made on the last banking day preceding the date

RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

on which hire becomes due.  Where there is any failure to pay hire on the due date because of an oversight or negligence, error or omission of Charterers' employees, bankers or their agents, or otherwise for any reason where there is an absence of intention to fail to make payment as set out, Owners shall give Charterers three banking days notice to rectify the failure, and where so rectified the payment shall stand as a punctual and regular payment.

42   Customary Assistance Clause
     With reference to Clause 8 of this Charter Party, "customary assistance" shall mean all types of work which the Master and the crew would normally do when the vessel is trading for the Owners' account such as but not limited to;

a)   All opening and closing of hatches in preparation for loading and discharging and when and where required, if permitted by local authorities.

b)   Closing and opening of hatches in the event of weather which may adversely affect condition of cargo on board during loading and discharging.

c)   Shifting/warping vessel during loading and/or discharging and shifting/warping berth.

d)   Raising and lowering of gangways and cranes before starting and ending operation.

e)   Shaping up holds/hatches, cranes and grabs, prior to arrival at load/discharge places so as immediately to commence loading and/or discharging operations.

The above services shall be considered as a minimum and shall in no way be construed as an alternative to or reduction in the standard of services from Officers and crew required under this Charter Party.

43   In the event that the vessel is delayed or rendered in-operative by strikes, labour stoppages or any other difficulties due to flag, ownership or crew of the vessel, such time lost to be considered as off-hire and all extra expenses to be for Owners' account.

44   Hire

     Hire to be paid at the rate of (see below) to Owners' bank account in Tokyo designated by the Owners in cash in United States Dollars, monthly in advance.

9



RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

Charterers shall pay for the use and hire of the vessel at agreed rate.

| | |
|---|---|
| 1st year to 7th year (fixed) | : USD 15,700.00 daily |
| 8th year (Option) | : USD 16,300.00 daily |
| 9th year (Option) | : USD 16,900.00 daily |
| 10th year (Option) | : USD 17,500.00 daily |

Payment of said hire to be made monthly in advance. Estimated Bunker on Delivery to be paid with the 1st hire payment before delivery and any adjustment necessary to be made in the 2nd hire payment.

Cable, communication, victualling and entertainment charges: USD1,500.00 per month or pro-rata.

Time charter hire described above is including 1.25% brokerage for MAERSK BROKER ASIA LIMITED, no address commission to the Charterers.

45      The vessel is guaranteed suitable for grab discharge and without any obstacles in her clear holds with vertical corrugations. It is understood and agreed that the Charterers have the privilege of authorizing the use of bulldozers in vessel's holds, provided bulldozers do not exceed limits of Tanktop strength.

46      Cargo Exclusion

Vessel to carry lawful merchandise excluding cargoes injurious to vessel and/or crew and/or stevedores, inflammable, explosives, hazardous or dangerous cargoes, acids, asphalt, ferro silicates, radioactive materials and its waste, borax and borates, direct reduced iron, direct reduced iron pellets and briquettes including hot briquette iron, ammonium nitrate (allowed provided fertilizer grade only), bones, fishmeal, black powders, blastings and detonator caps, logs, nuclear products, arms, ammunition, hides, naphtha, tar, pitch, petroleum, or its products, copra, livestock, creosote and creosoted goods, expellers, motor blocks and turnings, sunflower seed except pellets which are allowed, calcium carbide, charcoal, calcium hypochlorite, caustic soda, asbestos, Indian coal, sponge iron and cotton, mahogany log, beam cutting and cut beams, nitrate, TNT, pesticides, copra products, turpentine, cholorine and derivatives



RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

thereof, soft pitch in bulk, bitumen, quebrahco, oil of any kind and in any form, gasoline, calcium hypochloride, resin, ammonia, ammonia sulphate, pyrites, oilseeds, soyacakes, oilcakes, seedcakes, manioc and manioc pellets, yellow phosphorous. No cargo requiring $CO_2$ fitting allowed.

All cargoes are to be loaded, stowed, trimmed and discharged as per IMO regulations in respect of carriage of cargo. Charterers may load concentrates always within IMO regulations and recommendations.

Charterers are allowed to carry 6 out of the below possible 8 cargoes each year:
a) max. 3 cargoes of petcoke
b) max. 2 cargoes of salt
c) max. 1 cargo sulphur (Vessel does not have A60 bulkhead. A temporary wooden bulkhead in front of the existing bulkhead to be fabricated in accordance with vessels' Class regulations/instructions. Bulkhead to be made, installed and paid for by, and the responsibility of the Charterers.)
d) max. 1 cargo of cement in bulk including cement clinker
e) max. 1 cargo of scrap

Above dirty cargoes not to be the final cargo before redelivery. Charterers may ask Owners to arrange chemicals, which to be paid for by the Charterers however Owners not to be responsible for any delays in supply of the same.

Lime coating for loading Salt/Sulphur clause

Charterers to lime-coat vessel's holds prior to loading salt/sulphur and remove lime-coating after completion of discharge upto Master's satisfaction at Charterers' time and expense.

Crew to carry out lime-coating/removal, if requested by Charterers at Charterers time and expenses, for which Charterers shall pay lumpsum US$2,500 in addition to the normal hold cleaning allowance, however crew/vessel shall not be responsible for such coating/removal.

Alternatively Charterers to use Hold Block vessel's holds prior loading and remove Hold Block after completion of discharge up to Master's satisfaction at Charterers time and expenses. Crew to carry out Hold Block/removal, if requested by Charterers at Charterers time and expenses, for which Charterers shall pay lumpsumUS$2,500 in addition to the normal hold cleaning allowance, however crew/vessel shall not be responsible for such coating/removal.

11



RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

Charterers assure to take following procedures:
- Charterers to provide the products prior loading together with all equipment necessary for the application.
- Upon completion of discharge, a further product to be supplied together with all equipment necessary for the removal
- The cost of the product, the equipment to be met by Charterers.

Petcoke Clause

The petcoke mentioned herein is only limited to the type of non-hazardous/non-dangerous green delayed type and/or calcined type. Charterers are permitted to load maximum 3 cargoes per year.

After discharging petcoke any time used for hold cleaning including necessary washing equipment and/or chemical additive to be for Charterers' account. Charterers shall pay lumpsum US$2,000 as extra hold cleaning allowance in addition to normal hold cleaning allowance, however crew/vessel shall not be responsible for such cleaning.

Salt Clause

Salt be loaded in accordance with IMO regulations. Charterers are permitted to load maximum 2 cargoes per year and the following procedure to be arranged;
Where customary accordingly to local regulations, holds to be thoroughly washed by vessel's crew with fresh water before loading and after discharging at Charterers' time, risk and expenses.
Charterers shall pay lumpsum US$ 2,000 as extra hold cleaning allowance in addition to normal hold cleaning allowance.

Sulphur Clause

Charterers are permitted to load only "lump and coarse grained sulphur" formed to a specific shape (E.G. prills, granulates, pellets, pastilles or flakes) Provided, however, that the same should the loaded always in accordance with IMO and SOLAS regulations.
Fine grained sulphur, molten sulphur and flowers of sulphur in bulk should always be excluded.
Charterers shall pay lumpsum US$ 2,000 as extra hold cleaning allowance in addition to normal hold cleaning allowance.





<u>Cement in bulk and cement clinker loading Clause</u>

Charterers to provide all necessary equipment / supplies for the carriage of cement in bulk or cement clinker and cleaning of holds after discharge at Charterers' time and expenses. Crew to carry out cleaning of holds, if required by Charterers, at Charterers' time and expense.

Charterers shall pay lumpsum US$ 2,000 as extra hold cleaning allowance in addition to normal hold cleaning allowance.

In case the vessel is equipped with permanent feeder holes, Charterers to load cement through the same as long as the size and/or location of the holes match with loading facilities.  If not, or if the vessel has no permanent feeder holes, Charterers to have option with ample notice to Owners, to cut up to maximum of 2 holes in reach hatchcover designated for cargo and shall restore the same at Charterers' time, risk and expense.

Owners/Master to provide Charterers' agents with hatchcover schematics so that these may be forward to Class surveyor for hole position recommendations/approval prior to cutting holes.

Holes not to be cut within the same frame space as existing grain feeding holes and only to be cut at a suitable place in the hatchcovers in accordance with vessel's buildings' specifications.

All cutting and restoring of the holes to be fully in accordance with vessel's class recommendations.  When restoring, Charterers to obtain from the vessel's class a Certificate of Seaworthiness without recommendation for future repairs at Charterers' time, risk and expense.

The Charterers to redeliver the vessel with such modifications to be restored to master's and class surveyor's satisfaction at Charterer's time and expenses. All class surveyor's fee for cutting and restoring cement holes to be for Charterers' account."





<u>RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845</u>
<u>CP DATED 19th AUGUST 2010</u>

<u>Scrap loading clause</u>

Charterers may load maximum 1 cargo of shredded/proler scrap and HHDW, HMS 1 and 2 excluding motor block and turnings per 12 month period. Such cargo to be loaded with soft-loading clause to apply.

First layer reaching up to 2 meters from tank top shall be loaded softly so as to provide a proper cushion. Charterers shall at their time and expenses arrange holds survey before loading and after discharging to ascertain damages to the holds. Should electro-magnets be used during loading and/or discharging, then the risk/time/expense of recalibrating the vessel's compass (if necessary) to be for Charterer's account.

In case of carriage of steel slabs, side to side stowage to be applied.

Steel cargoes to be sufficiently dunnaged / lashed / secured and unlashed/ unsecured by stevedores at Charterers' expense, risk and time under supervision of the Master and up to his satisfaction. Charterers agree, if so requested by owners, to jointly appoint an independent surveyor to perform a preloading survey of the cargo with time and cost equally shared.

<u>Grain Loading</u>

The vessel is suitable for carrying cargoes of heavy grain in bulk in all holds without requiring any securing arrangements. For the carriage of grain in bulk, the vessel to have on board at any time of this time charter period valid stability particulars for grain cargoes issued by vessel's classification society on the basis of latest SOLAS and further amendments, if any, including approved calculations for 'untrimmed' ends.

<u>Deck Cargo clause</u>

Deck cargo to be loaded, stowed, lashed, secured, chocked and dunnaged etc and discharged at the Charterers' risk and expense and to be loaded within vessel's deck/hatch cover strengths but always to Master's satisfaction as to vessel's trim and stability. Any lashing/securing material, if necessary, shall be for Charterers' account. Bill of lading shall bear remarks "carried on deck at Shipper's risk and without carrier's responsibility for loss or damage howsoever caused" or if from and to USA or its territories "Carried on deck at Shipper's risk as to perils inherent in such carriage but in all other respects subject to the provisions of the United States carriage of goods by Sea Act 1936 and any

14



RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

subsequent amendments."

47    The vessel shall be equipped with INMARSAT C&FB in addition to telegraph and VHF telephone to comply with international regulations to allow the vessel to communicate with land stations. Charterers and supercargo have the right of using vessel's means of communications.

48    If the vessel calls at any U.S.A. port for the purpose of loading and/or discharging cargo, vessel's equipment shall comply with the regulations established by U.S. Public Law 85/742, Part9 (Safety and Health Regulation for Longshoring) and amendments hereto.

      If longshoremen are not permitted to work due to failure of Owners and/or Master and/or Owner's Agents to comply with the aforementioned regulations, any delay and expenses shall be for Owners' account. Vessel to comply with provisions of U.S.Coast Guard Regulations for Federal Water Pollution Control Act, Section 154/155/156 and 33 C.F.R as amended and any delays to vessel as a result of failure to comply to be for Owners' account.

49    <u>Weather Routing Clause</u>

      The Charterers may supply an independent weather routing company's advice to the Master during voyages specified by the Charterers. The Master shall comply with the reporting procedures of the routing service selected by the Charterers, and follow routing company's suggestions concerning routing, but Master, at his reasonable discretion, may not follow the suggested routes subject to overriding factors of safety, in which case he has to detail in log book and report to Charterers the reason of diverting from them. Should the actual performance of the vessel show any failure to satisfy one or both speed and consumption representations, the hire shall be correspondingly decreased by an amount not more than required to indemnify the Charterers to the extent of such failure, this charter remaining otherwise unaffected. Failure, if any, to be assessed by the independent weather routing company's performance reports and vessel's deck logs, which are to be binding on both parties.



RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010



In the event of a significant discrepancy between the weather routing company's performance report and vessel's deck log, then routing company's reports shall prevail over the vessel's deck log.

Throughout the currency of this charter, Owners warrant that the vessel shall be capable of maintaining and shall maintain on all sea passages the guaranteed average minimum speed and guaranteed average maximum consumption as stipulated in the vessel's description clause.

50      Owners guarantee Officers and crew are employed under a bona fide Seamen Union Agreement equivalent to I.T.F.

51      Water Ballast
        Charterers have the right to instruct the master to utilise the vessel's maximum water ballast capacity, including floodable hold(s) in order to bring down the vessel's height to get into position under loading and/or discharging appliances however in conforming with freeboard and safety regulations.

52      Cargo claims to be settled according to latest New York Produce Interclub Agreement and amendments/revisions thereto.

53      Vaccination
        Owners to arrange at their expense that the Master, Officers and crew of the vessel hold valid vaccination certificates upon delivery of the vessel and throughout the time charter period.

54      Drug and Alcohol

        Owners or vessel's technical managers maintain a policy on drug and alcohol abuse applicable to the vessel which meets or exceeds the standard in the Oil Companies International Marine Forum Guidelines for the control of drugs and alcohol on board ships.

        Owners to be responsible for all cost arising from detention, seizure and forfeiture of the vessel in the event of any contraventure of U.S.Antidrug Abuse Act of 1986 or subsequent amendments and vessel to be off hire for any period

RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

during such detention seizure or forfeiture unless caused by Charterers and/or
Charterers' servant or Shippers in which case Charterers to be fully
responsible for all consequences arising thereof.

55      Draft Survey Clause

Owners warrant that vessel has on board capacity plan, hydrostatic curves and
tables of displacement, tank calibration and trimming correction tables, all
sounding tables to be in good maintenance conditions and free from
impediments and vessel to have ballast tanks either empty or pressed full and
trim to be reduced to minimum and not to exceed trim table corrections.
If vessel does not comply with above Master requirements, will be put off-hire
until able to perform such survey.
Master to keep written record of drainage moisture pumped out. If required
Master to forward to Charterers upon arrival at unloading port and before start
discharging a certificate indicating all records of liquids pumped overboard.

56      Trade Exclusions

Worldwide trading always afloat, always via safe berth(s)/safe port(s)/safe
anchorage(s), always afloat always within Institute Warranty Limits excluding
Cuba, Lebanon, Albania, Cambodia, North Korea, Somalia, Ethiopia, North
Yemen, Syria, all Russian Pacific Port(s), Eritrea, Sierra Leone, Yemen, Congo,
Israel and war or war like zones and any other places where the vessel to be
prohibited to call from time by the national authorities including United
Nations under which the vessel is during the currency of the Charter Party.
Port Harcourt in Nigeria always to be allowed. Ports other than Port Harcourt
in Nigeria to be allowed provided Charterers indemnify Owners for all costs
associated with Nigerian stowaways.

It is however understood that if any of the above countries become acceptable to
normal trading as far as exempted from extra war risk insurance premium and
not being banned by trading by United Nations but always North Korea
excluded, and Charterers may direct the vessel to load/discharge/bunker at port
of these countries subject to Owners' prior consent which not to be unreasonably



SHIPBROKERS
MAERSK BROKER
(UK) LTD
LONDON

RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

withheld.

Whenever Owners' consent is required it is understood that Owners will take steps in order to give reply to Charterers as soon as practically possible.

57     Off-Hire Periods

Charterers at the end of each timecharter period ( 7 years initial period and then three optional periods of one year) to have the option to add to the charter period any off-hire, excluding off-hire for scheduled drydocking, to the end of each charter period.

Lay-up clause

Charterers may at any time, request the Owners to lay-up the vessel. Unless unforeseen events the lay-up period cannot be less than four months. Beyond such period Charterers may ask for re-commissioning which is to be effected as soon as practically possible. Once lay-up decision has been notified to the Owner he will decide, in agreement with the Charterers, the place of laying-up at a safe designated berth or anchorage acceptable to vessel's Underwriters. The cost of bringing the vessel directly from the last discharging port to the lay-up place, and possible cost, duly evidenced, for the commissioning and re-commissioning of the vessel will be for Charterers' account. However drydocking expenses after lay-up, if necessary will be paid by Charterers in so far as this drydocking takes place before the normal date and will be apportioned to the advance in time of the operation. For this purpose the Owners will indicate, before the lay-up the date at which the next drydocking was scheduled.

During the lay up period the bunker cost will be for Charterers account and Owners not responsible for any loss of speed or increase in bunker consumption due to marine growth until vessels' next Drydock but Charterers have the option to arrange for cleaning of the vessel's underwater parts at Charterers' time and expense.

Hire shall continue to be paid for the period of such lay-up but it is agreed that any reduction in Owner's costs will be credited to the Charterers.





<u>RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845</u>
<u>CP DATED 19th AUGUST 2010</u>

58      <u>Suez / Panama Canal</u>

The vessel is adequately fitted (including necessary documents required on board) and suitable for the transit of the Suez or Panama Canal at all times on the maximum permissible draft for this type of the vessel. Should there be any delay for measurement to be taken because of initial transit in Panama/Suez canals, same to be for Owners' account.

59      <u>Bills of Lading</u>

a) Discharging port(s) shown on Bills of Lading do not constitute a declaration of discharging port(s) and Charterers to have the right to order the vessel to any port(s) within the term of this Charter Party. In this case Charterers to give prior notice thereof well in advance to Owners.
Charterers hereby indemnify Owners against any claim and any additional expenses brought by holders of Bills of Lading by reason of change of destination. If required by Owners, Charterers are to provide Letter of Indemnity as per Owners' P&I Club, without bank guarantee and signed by Charterers only.

b) Should Bills of Lading not arrive discharging port(s) in time, then Owners to release the entire cargo without presentation of original Bills of Lading if so instructed by Charterers. Charterers hereby indemnify Owners against all consequences of discharging cargo without presentation of original Bills of Lading, if required by Owners, Charterers are to provide a Letter of Indemnity as per Owners P&I Club without bank guarantee and signed by Charterers only.

c) Charterers and/or their Agents are hereby authorized by Owners to sign on Master's and/or Owners' behalf Bills of Lading as presented in accordance with Mate's, Tally Clerk's receipt without prejudice to this Charter Party.

d) All Bills of Lading issued by vessels while performing under this timecharter party shall contain the following clauses (as attached) :

New Both to Blame Collision Clause
New Jason Clause
General Clause Paramount, P&I bunker deviation Clause, U.S.A., Canadian



RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

Clause Paramount, whichever applicable Conwartime 2004.

60      Insurance

a)   Charterers to have the benefit of any return insurance premium receivable by
Owners from Underwriters or P&I Club (as and when received) by reason of the
vessel being in port for a minimum of 30 days.

b)   Any additional of war risk premiums and breaching International Warrantee
Limit premiums on hull and machinery and crew for trading to restricted area
to be for Charterers' account. Crew war risk bonus, if any, to be for Charterers'
account.

c)   P&I: Owners guarantee that the vessel is entered and shall remain for the
duration of this Charter Party in a Protection and Indemnity Association
belonging to International Groups of PandI with normal full cover.

d)   Vessel is covered by (Reverting later)

61      If requested by Charterers, the vessel's crew to perform cleaning cargo holds
after each laden voyage if permitted by local shore regulations, if weather and
sea condition permit to do so. Charterers will pay a lumpsum of USD 500.00 per
hold as compensation to such cleaning which to include the supply and cost of
fresh water if sufficient on board otherwise Charterers to pay for the additional
fresh water if required from shore-side suppliers.   A further payment of
USD250.00 per hold if dunnage removal/disposal is required.

The crew will do the best to clean the cargo holds as quick as possible but they
are not responsible for any delay or extra cost should the inspection of cargo
holds cannot be passed unless such inspection is failed due to rust/rust scale
which case vessel to be put off-hire for any time lost and all extra expenses to be
for Owners account.

The Owners not to be responsible for hold cleaning and vessel to remain on hire
until passed.





RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

62    P&I bunker deviation clause (see Clause 90), New Jason Clause, New Both-to-Blame Collision Clause, General Clause Paramount, U.S.A. or Canadian Paramount Clause whichever applicable and Conwartime 2004 as attached (Annex "A") are deemed to be incorporate in this Charter Party and to apply.

63    Vessel at first loading port to be clean and ready to load Charterers' intended cargo to the satisfaction of local surveyor, failing which vessel to be put off-hire until ready to load and all direct extra expenses incurred to be borne by Owners.

64    Boycott Clause

The Owners guarantee that vessel's Officers and crew are employed under terms and conditions approved by ITF during the whole period. Should the vessel be boycotted, picketed, blacklisted or similar incident at any port or place by shore and/or port labours and/or tugboat and/or pilots, or by government and/or any authority by reason of the vessel's flag/registry/manning or ownership or terms and conditions on which members of Officers/crew are employed, or by reason of trading of this vessel or other vessel under the same ownership, management, operation or control, or by reason of the vessel's construction and/or her fittings and/or her other equipment, all direct consequences and any direct extra expenses incurred therefrom to be for Owners' account and the Charterers are entitled to place the vessel off-hire for any time lost by such reasons.

65    Drydocking Clause

The Owners shall have the option to place the vessel in drydocking during the currency of this Charter Party at the convenient time and place to be mutually agreed upon between Owners and Charterers for bottom cleaning and painting and/or repair as required by class or dicated by circumstances.
However, the Owners shall notify the Charterers of the intention of such drydocking and/or periodical survey with 6 months prior notice except emergency case. Charterers will endevour to allow the Owners to drydock the vessel in Far East/South East as voyage every two(2) and half years as possible.



66    Smuggling/Drugs Clause

Any delay, expenses and/or fine incurred on account of smuggling/drugs shall be for Owners' account unless caused by Charterers or their agents/servants.

67    Off Hire Due to Crew

At loading and discharging port(s) any time lost by the vessel for reason of all the crew not being on board when the vessel is ready to sail to be for Owners' account as well as expenses deriving therefrom.

68    Off Hire Due to Air and Water Pollution

The vessel shall be off hire during any time lost on account of the vessel's non-compliance with government and/or international, national and local regulations pertaining to water pollution and air pollution.

69    Deleted.

70    This Charter Party shall be governed by English law and arbitration to be held in London.

71    Double Banking Clause

The Charterers have the option to bunker or load or discharge a part of the entire cargo from/on the shore or from/into another vessel by means of trans-shipment which shall be done at berth or in Charterers' option in double banking system.
However, Charterers shall provide sufficient fendering and double banking operation shall be conducted under Master's supervision and should always be to his satisfaction. Charterers to be responsible for all damages and all costs and expenses for fitting the vessel accordingly.





RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

73      Mobile Crane

Charterers have the option to place cranes onboard the vessel at their own risk,
provided such placement is safe and there is sufficient strength on deck or
hatch covers to support such mobile cranes and placement on board the vessel
of crane shall be always supervised by the Master. All cost and time in this
clause to be for the Charterers' account.

74      Vessel to comply with all IMO recommendations/regulations for loading,
carrying, discharging solid bulk cargoes.

75      Joint on/off-hire surveys to be carried out, the cost being equally shared
between Owners and Charterers, but the time occupied for on-hire survey to be
for Owners' account and the time occupied for off-hire survey to be for
Charterers' account, both instances only actual time lost to count. On-hire
survey to be held at delivery port and off-hire survey in redelivery port.

76      Any tax levied by and government in respect or cargo or freight is for
Charterers' account and any tax in respect of the vessel or vessel's flag or
ownership or management is for Owners' account. However, all tonnage tax,
harbour dues, at each port of call during this Charter period are to be
for Charterers' account.

77      U.S. Trade-Unique Bill of Lading Identifier Clause (SCAC)

The Charterers warrant that each transport document accompanying a
shipment of cargo destined to a port or place in the United States of
America shall have been endorsed with a unique Bill of lading identifier as
required by the U.S. Customs regulations (19 CRF part4, section 4.7.A),
including subsequent changes, amendments or modifications thereto, not
Later than the first port of call.

Non-compliance with the provisions of this Clause shall amount to breach
of warranty for the consequences of which Charterers shall be liable and
shall hold the Owners harmless and shall keep them indemnified against
all claims whatsoever which may arise and be made against them.

RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

Furthermore, all time lost and all expenses incurred including fines as a result of the Charterers' breach of the provisions of this Clause shall be for the Charterers' account.

78      Inspection

With prior notice to Owners, the Charterers at their time, risk and expenses shall have the option of holding an inspection at any time of this Charter. The Owners and Master shall give every facility and assistance provided there is no interference to vessel's work.

79      Remeasurement

The Charterers have the option to reduce vessel's deadweight subject to Owners' classification society's approval at Charterers' time and expenses. The Charterers to restore original deadweight before redelivery at Charterers' time and expenses.

80      The Owners shall provide any documentation relating to the vessel that may be required to permit the vessel to trade within the agreed trade limits, including but not limited to deratisation and Certificates of Financial Responsibility for Oil Pollution, valid International Tonnage Certificate, Suez and Panama Tonnage Certificates, valid Certificate of Registry and certificates relating to the strength, stability, including grain certificates and/of serviceability of the vessel. The Charterers to advise Owners in advance of special certificates required other than usual trading certificates.

81      Split of Bills of Lading Clause

Charterers and/or Agents are hereby authorized by Owners / Master to split Bills of Lading and issue ship delivery orders in transferable form after receipt of full set of original Bills of Lading by Owners or Master or Owners' Agents when nominated by Owners.

Delivery orders to be issued strictly in accordance with Mate's receipts and



RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

Bills of Lading including but not limited to any endorsements as to the
condition and quantity of the cargo and all terms, conditions and
exceptions set out in the Bill of Loading. The delivery orders shall not
prejudice the shipowner's rights under the Bills of Lading.

All delivery orders issued pursuant to this Clause shall, without prejudice
to the generality of the above, include the following Clauses:

a) Paramount Clause General
The International Convention for the Unification of Certain Rules of Low
relating to Bills of Lading signed at Brussels on 25 August 1924 ("the Hague
Rules") as amended by the Protocol signed at Brussels on 23 February 1968
("the Hague-Visby Rules") and as enacted in the country of shipment shall
apply to this "Delivery Order". When the Hague-Visby Rules are not enacted in
the country of shipment, the corresponding legislation of the country of
destination shall apply, irrespective of water such legislation may only regulate
outbound shipments.
When there is no enactment of the Hague-Visby Rules in either the country of
shipment or in the country of destination, the Hague-Visby Rules shall apply to
this "Delivery Order" save where the Hague Rules as enacted in the country of
shipment or if no such enactment is in place, the Hague Rules as enacted in the
country of destination apply compulsorily to this "Delivery Order".

The protocol signed at Brussels on 21 December 1979("the SDR Protocol 1979")
shall apply where the Hague-Visby Rules apply, whether mandatory or by this
"Delivery Order".
The Carrier shall small in no case be responsible for loss of or damage to cargo
arising prior to loading, after discharging, or while the cargo is in the change of
another carrier, or with respect to deck cargo and live animals.
Charterers shall indemnify and hold Owners harmless against any liability,
loss damage or expenses arising as a result of Split Bills of Lading or Delivery
Orders being issued pursuant to the terms of this charter party and issue Letter
of Indemnity, when required, as per Owners P and I recommending form.

b) This shipment was loaded on board the vessel as part of one original lot
of ............(enter description of cargo) of which.........(enter quantity) was

25



RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

loaded at ..........(enter name of load port) and..........(enter quantity)   was
loaded at ..........(enter second load port etc) with no segregation as   to parcels.
The vessel undertakes to delivery only that proportion of the cargo actually
loaded which is represented by the percentage that the total amount specified
in the delivery orders bears to the total of the undivided bulk delivered at
destination. Neither the vessel nor the Owner assumes any responsibility for
the separation of the undivided Bulk at the port if delivery.

SEA WAYBILL(S) CLAUSE
This clause to be applied for Japan discharging only.  Should Sea Waybills
become customary or necessary elsewhere, Charterers to ask Owners for their
approval, which not to be unreasonably withheld.

Charterers' option to issue sea waybill(s), instead of Bills of Lading in case of
sea waybill(s) being issued instead of bill(s) of lading, the cargo to be released
at discharging port(s) as per Charterers' written discharging instruction at the
sole risk and responsibility of Charterers. Charterers shall indemnity and hold
owners harmless against any liability, loss, damage and/or expense caused to
and/or incurred by Owners by virtue of Owners' complying with Charterers'
instruction for release of the cargo under the seawaybill and/or by the use of sea
waybill(s). Further more the following steps shall be taken.


In case the master is requested to authorize agents to sign sea waybill(s), copy
of sea waybill(s) shall be sent on fax to the master soonest possible, latest before
arrival at the discharging port.

Charterers shall give written discharging instruction including name of
receivers, discharging port to the Master in time for arrival at the discharging
port.

82     Charterers to have the privilege of painting their markings on vessel's
       funnel at Charterers' time and expenses.
       Owner's markings to be restored prior to redelivery at Charterers' time and
       expenses.

RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

83      Holds on redelivery to be clean-swept, water washed. Charterers have the
        option of redelivering the vessel upon completion of discharge of cargo
        without cleaning vessel's holds by paying Owners US$5,000 lumpsum.
        Petcoke , Salt, Sulphur, Cement/Clinker, Scrap not to be last cargo

84      Freight tax, if any, for Charterers' account. Tax on hire levied in the country of
        residence of the Owners or levied by the nation of the vessel's flag to be for
        Owners account.

85      ISM Clause

        Owners guarantee that the vessel's management company complies with the
        ISM Code and will be in possession of a valid Safety Management Certificate
        and will remain so for the entirety of her employment under this Charter
        Party. The Owners to provide Charterers satisfactory evidence of
        compliance if required to do so but Charterers request always to be
        reasonable. Owners to remain responsible for expenses and damages
        arising directly as a result of Owners' and/or vessel's non-compliance to
        the above-mentioned requirement of ISM Code and/or valid Safety
        Management Certificate.

86      This contract is subject to successful conclusion of a shipbuilding contract for a
        construction of the Vessel to be declared latest by 1st September 2010.

87      ISPS/MTSA Clause for Time Charter Party 2005
        (a)(i)The Owners shall comply with the requirements of the International Code
        for the Security of Ships and of Port Facilities and the relevant amendments to
        Chapter XI of SOLAS (ISPS Code) relating to the vessel and "the Company" (as
        defined by the ISPS Code). If trading to or from the United States or passing
        through United waters, the Owners shall also comply with the requirements of
        the US Maritime Transportation Security Act (MTSA) relating to the Vessel
        and the "Owner" (as defined by the MTSA).

        (ii) Upon request the Owners shall provide the Charterers with a copy of the
        relevant International Ship Security Certificate (or the interim International
        Ship Security Certificate) and the full style contact details of the Company

RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010



Security Officer(CSO).

(iii) Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Owners or "the Company"/"Owner" to comply with the requirements of the ISPS Code/MTSA or this Clause shall be for the Owner's account, expect as otherwise provided in this Charter Party.

(b)(i) The Charterers shall provide the Owners and the Master with their full style contact details and, upon request, any other information the Owners require to comply with the ISPS Code/MTSA. Where sub-letting is permitted under the terms of this Charter Party, the Charterers shall ensure that the contact details of all sub-charterers are likewise provided to the Owners and the Master, Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:

"The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of charter party, shall ensure that the contact details of all sub-charterers are likewise provided to the Owners".

(ii) Loss, damages expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the Charterers to comply with this Clause shall be for the Charterers' account, except as otherwise provided in this Charter Party.

(c) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code/MTSA including, but not limited to, security guards, launch service, vessel escorts, security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the negligence of the Owners, Master or crew. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

28



RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010



(d) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

88    US CUSTOMS ADVANCE NOTIFICATION/AMS CLAUSE FOR TIME CHARTERPARTIES.

(a) If the Vessel loads or carries cargo destined for the US or passing through US ports in transit, the Charterers shall comply with the current US Customs regulations (19 CFR 4.7) or any subsequent amendments thereto and shall undertake the role of carrier for the purposes of such regulations and shall, in their own name, time and expense:

i) Have in place a SCAC (Standard Carrier Alpha Code);
ii) Have in place an ICB (International Carrier Bond);
iii)Provide the Owners with a timely confirmation of i) and ii) above; and
iv)Submit a cargo declaration by AMS (Automated Manifest System) to the US
       Customs and provide the Owners at the same time with a copy thereof.

(b) The Charterers assume liability for and shall indemnify, defend and hold harmless the Owners against any loss and/or damage whatsoever (including consequential loss and/or damage) and/or any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers' failure to comply with any of the provisions of sub-clause (a). Should such failure result in any delay then, notwithstanding any provision in this Charter Party to the contrary, the Vessel shall remain on hire.

(c) If the Charterers' ICB is used to meet any penalties, duties, taxes or other charges which are solely the responsibility of the Owners, the Owners shall promptly reimburse the Charterers for those amounts.

(d) The assumption of the role of carrier by the Charterers pursuant to this Clause and for the purpose of the US Customs Regulations (19 CFR 4.7) shall be without prejudice to the identity of carrier under any bill of lading, other contract, law or regulation.



**RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845**
**CP DATED 19th AUGUST 2010**

89 **ARBITRATION CLAUSE**

Any dispute arising under the Charter to be referred to arbitration in London, one Arbitrator to be nominated by the Owners, and the other by the Charterers. This Charter to be governed by and construed in accordance with English Law.

In case Arbitrators cannot agree to a decision they will appoint an Umpire whose award will be final and binding upon both parties.
If either one of the appointed Arbitrators refuses to act, or is incapable of acting, or dies, the party who appointed him may appoint a new Arbitrator in his place.

If one party fails to appoint an Arbitrator either originally or by way of substitution as aforesaid, for seven clear days after the other party, having appointed his Arbitrator, has served the party making default with notice to make the appointment, the party who has appointed an Arbitrator may appoint that Arbitrator in the reference and his award shall be binding on both parties.

Where the amount claimed by the claimant is less than US$150,000 excluding interest, the reference shall be to a sole arbitrator and the arbitration shall be conducted in accordance with the LMAA FALCO Rules.

Where the amount claimed by the claimant is less US$50,000 excluding interest, the reference shall be to a sole arbitrator and the arbitration shall be conducted in accordance with LMAA Small Claims Procedure without right of appeal.

90 Deleted.

91 Watchmen/Guards
All charges and expenses for watchmen and compulsory watchmen/guards always to be for Charterer's account, except watchmen assigned at Master's request for the safety of the ship and/or the crew to be paid by Owners.

92 Bunker Fuel Sulphur Content
(a)Without prejudice to anything else contained in this Charter Party, the Charterers shall supply fuels of such specifications and grades to permit the



SHIPBROKERS
MAERSK BROKER
(UK) LTD
LONDON

RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

vessel, at all times, to company with the maximum sulphur content requirements of any emission control zone when the Vessel is ordered to trade within that zone.

The Charterers also warrant that any bunker suppliers, bunker craft operators and bunker surveyors used by the Charterers to supply such fuels shall comply with Regulations 14 and 18 of MARPOL Annex VI, and will endeavour to include the Guidelines in respect of sampling and the provision of bunker delivery notes.

The Charterers shall indemnify, defend and hold harmless the Owners in respect of any loss, liability, fines, costs or expenses arising or resulting from the Charterer's failure to comply with this Sub-clause(a).


(b)Provided always that the Charterers have fulfilled their obligations in respect of the supply of fuels in accordance with Sub-clause (a), the Owners warrant that:

(i)the vessel shall comply with Regulations 14 and 18 of MARPOL Annex VI and with the requirements of any emission control zone; and
(ii)the Vessel shall be able to consume fuels of the required sulphur content when ordered by the Charterers to trade within any such zone.

Subject to having supplied the Vessel with fuels in accordance with Sub-clause (a), the Charterers shall not otherwise be liable for any loss, delay, fines, costs or expenses arising or resulting from the Vessel's failure to comply with Regulations 14 and 18 of MARPOL Annex VI.

(C)For the purpose of this Clause, "emission control zone" shall mean zones as stipulated in MARPOL Annex VI and/or zones regulated by regional and/or national authorities such as, but not limited to, the EU and the US Environmental Protection Agency.

93      Deleted.


94      All negotiations and eventual fixture to be kept strictly private and confidential.



RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

95      Long Port Stay Clause

In the event that the vessel is required by Charterers to stay for a prolonged period in port or anchorage waiting for berth or otherwise, and as a result of which a loss of performance (based on pre-long stay voyage performance and post-long stay voyage performance) occurs, and that such loss of performance warrants underwater cleaning of the vessel, Charterers shall undertake such cleaning at their time and expenses to the Owners' satisfaction.   Further, Charterers shall not claim any penalty on speed or bunker consumption during the remaining period before underwater cleaning or drydocking scheduled by Owners.



RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010



*ANNEX "A"*

Attached as per Clause 62:

## Both to Blame Collision Clause

If the liability for any collision in which the vessel is involved while performing this Charter Party falls to be determined in accordance with the laws of the United States of America, the following clause shall apply:-

The New Both to Blame Collision Clause

"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation or in the management of the ship, the Owners of the good carried hereunder will indemnify the carrier against all loss or liability represents loss of or damage to or any claim whatsoever of the Owners of the said goods, paid or payable by the other or non-carrying ship or her owners to the Owners of the said goods and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the Owners, operators of those in charge of any ship or ships or object other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contract."

and the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.

## The New Jason Clause

"In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, the statute, contract or otherwise, the goods,

33



RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

shippers, consignees or owners of the goods, shall contribute with the carrier
in general average to the payment of any sacrifices, losses or expenses of
a general average nature that may be or incurred and shall pay salvage and
special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for
as fully as is the said salving ship or ships belonged to strangers. Such
deposits as the carrier or his agents may deem sufficient to cover the estimated
contribution of the goods and any salvage and special charges thereon shall,
if required be made by the goods, shippers, consignees or owners of the goods
to the carrier before delivery"

If the vessel loads in the U.S.A. the U.S.A. Clause Paramount shall be
incorporated in all Bills of Lading and shall read as follows.

This Bill of Loading shall have effect subject to the provisions of the Carriage
of Goods by Sea Act of the United States, approved 16 April 1936, which shall
be deemed to be incorporated herein and nothing herein contained shall be
deemed a surrender by the carrier of any of its rights or immunities or an
increase of any of its responsibilities or liabilities under said Act. If any term of
this Bill of Loading be repugnant to said Act to any extent, such terms shall
be void to that extent, but no further.

General Clause Paramount

This Bill of Lading shall have effect subject to the provisions of any legislation
relating to the carriage of goods by sea which incorporates the rules relating to
Bills of Lading contained in the International Convention, dated Brussels, 25th
August, 1921 and which is compulsorily applicable to the contract of carriage
herein contained. Such legislation shall be deemed to be incorporated herein,
but nothing herein contained shall be deemed a surrender by the Carrier of any
of its rights or immunities or an increase of any of its responsibilities or
liabilities thereunder. If any incorporated, such term shall be void to that extent
but no further. Nothing in this Bill of Lading shall operate to limit or deprive
the Carrier of any statutory protection or exemption from, or limitation of
liability.



**RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845**
**CP DATED 19th AUGUST 2010**



## USA Clause Paramount

This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved 16 April, 1936, which shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this Bill of Lading be repugnant to said Act to any extent, such term shall be void to that extent, but no further.

## Canadian Clause Paramount

This Bill of Lading, so far as it relates to the carriage of goods by water, shall have effect, subject to the provisions of the Water Carriage of Goods Act, 1936, enacted by the Parliament of the Dominion of Canada, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the Carrier of any of its right or immunities or an increase of any of its responsibilities or liabilities under the said Act. If any terms of this Bill of Lading be repugnant to said Act to any extent, such terms shall be valid to that extent but not further.

## War Risks Clause for Time Charters, 2004 (CONWARTIME 2004)

(a)  For the purpose of this Clause, the words:

 (i)  "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

(ii)  "War Risks" shall include any actual, threatened or reported:
war; act of war; civil war; hostilities; revolution; rebellion; civil commotion; warlike operations; laying of mines; acts of piracy; acts of terrorists; acts of hostility or malicious damage; blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever); by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the

35



reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(b) The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the Vessel, her cargo, crew or other persons on board the Vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(c) The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerent's right of search and/or confiscation.

(d) (i) The Owners may effect war risks insurance in respect of the Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their protection and Indemnity Risks), and the premiums and/or calls therefore shall be for their account.

(ii) If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the Vessel is within, or is due to enter and remain within, or pass through any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then the actual premiums and/or calls paid shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first.

(e) If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which



RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

is dangerous in the manner defined by the said terms, then the actual bonus or additional wages paid shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first.

(f) The Vessel shall have liberty:-
(i) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(ii) to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(iii) to comply with the terms of any resolution of the Security Council of the United Nations, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(iv) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(v) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

(g) If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so

37



<u>RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845</u>
<u>CP DATED 19th AUGUST 2010</u>

and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

(h) If in compliance with any of the provisions of sub-clauses (b) to (g) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter Party.



ANNEX "B"

STANDARD FORM LETTER OF INDEMNITY TO BE GIVEN IN RETURN FOR DELIVERING CARGO AT A PORT OTHER THAN THAT STATED IN THE BILL OF LADING

**Letter Head of Charterers**

[*insert date*]

To:  [*insert name of Owners*]
   The Owners of the [*insert name of ship*]
   [*insert address*]

Dear Sirs

Ship:             [*insert name of ship*]
Voyage:           [*insert load and discharge ports as stated in the bill of lading*]
Cargo:            [*insert description of cargo*]
Bill of lading:   [*insert identification numbers, date and place of issue*]

The above cargo was shipped on the above ship by [*insert name of shipper*] and consigned to [*insert name of consignee or party to whose order the bill of lading is made out, as appropriate*] for delivery at the port of [*insert name of discharge port stated in the bill of lading*] but we, [*insert name of party requesting substituted delivery*], hereby request you to order the ship to proceed to and deliver the said cargo at [*insert name of substitute port or place of delivery*] against production of at least one original bill of lading.

In consideration of your complying with our above request, we hereby agree as follows :-

1.  To indemnify you, your servants and agents and to hold all of you harmless in respect of any liability, loss, damage or expense of whatsoever nature which you may sustain by reason of the ship proceeding and giving delivery of the cargo



RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

against production of at least one original bill of lading in accordance with our request.

2.  In the event of any proceedings being commenced against you or any of your servants or agents in connection with the ship proceeding and giving delivery of the cargo as aforesaid, to provide you or them on demand with sufficient funds to defend the same.

3.  If, in connection with the delivery of the cargo as aforesaid, the ship, or any other ship or property in the same or associated ownership, management or control, should be arrested or detained or should the arrest or detention thereof be threatened, or should there be any interference in the use or trading of the vessel (whether by virtue of a caveat being entered on the ship's registry or otherwise howsoever), to provide on demand such bail or other security as may be required to prevent such arrest or detention or to secure the release of such ship or property or to remove such interference and to indemnify you in respect of any liability, loss, damage or expense caused by such arrest or detention or threatened arrest or detention or such interference, whether or not such arrest or detention or threatened arrest or detention or such interference may be justified.

4.  The liability of each and every person under this indemnity shall be joint and several and shall not be conditional upon your proceeding first against any person, whether or not such person is party to or liable under this indemnity.

5.  This indemnity shall be governed by and construed in accordance with English law and each and every person liable under this indemnity shall at your request submit to the jurisdiction of the High Court of Justice of England.


Yours faithfully

For and on behalf of

[*insert name of Requestor*]

The Requestor



<u>RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845</u>
<u>CP DATED 19th AUGUST 2010</u>

Signature

STANDARD FORM LETTER OF INDEMNITY TO BE GIVEN IN RETURN FOR
DELIVERING CARGO WITHOUT PRODUCTION OF THE ORIGINAL BILL OF
LADING

### Letter Head of Charterers

*[insert date]*

To:  *[insert name of Owners]*
   The Owners of the *[insert name of ship]*
   *[insert address]*

Dear Sirs

Ship:          *[insert name of ship]*
Voyage:        *[insert load and discharge ports as stated in the bill of lading]*
Cargo:         *[insert description of cargo]*
Bill of lading: *[insert identification numbers, date and place of issue]*

The above cargo was shipped on the above ship by *[insert name of shipper]* and
consigned to *[insert name of consignee or party to whose order the bill of lading is made
out, as appropriate]* for delivery at the port of *[insert name of discharge port stated in
the bill of lading]* but the bill of lading has not arrived and we, *[insert name of party
requesting delivery]*, hereby request you to deliver the said cargo to *[insert name of
party to whom delivery is to be made]* at *[insert place where delivery is to be made]*
without production of the original bill of lading.

In consideration of your complying with our above request, we hereby agree as follows :-

1.   To indemnify you, your servants and agents and to hold all of you harmless in
     respect of any liability, loss, damage or expense of whatsoever nature which you
     may sustain by reason of delivering the cargo in accordance with our request.

2.   In the event of any proceedings being commenced against you or any of your



servants or agents in connection with the delivery of the cargo as aforesaid, to provide you or them on demand with sufficient funds to defend the same.

3.  If, in connection with the delivery of the cargo as aforesaid, the ship, or any other ship or property in the same or associated ownership, management or control, should be arrested or detained or should the arrest or detention thereof be threatened, or should there be any interference in the use or trading of the vessel (whether by virtue of a caveat being entered on the ship's registry or otherwise howsoever), to provide on demand such bail or other security as may be required to prevent such arrest or detention or to secure the release of such ship or property or to remove such interference and to indemnify you in respect of any liability, loss, damage or expense caused by such arrest or detention or threatened arrest or detention or such interference, whether or not such arrest or detention or threatened arrest or detention or such interference may be justified.

4.  If the place at which we have asked you to make delivery is a bulk liquid or gas terminal or facility, or another ship, lighter or barge, then delivery to such terminal, facility, ship, lighter or barge shall be deemed to be delivery to the party to whom we have requested you to make such delivery.

5.  As soon as all original bills of lading for the above cargo shall have come into our possession, to deliver the same to you, or otherwise to cause all original bills of lading to be delivered to you, whereupon our liability hereunder shall cease.

6.  The liability of each and every person under this indemnity shall be joint and several and shall not be conditional upon your proceeding first against any person, whether or not such person is party to or liable under this indemnity.

7.  This indemnity shall be governed by and construed in accordance with English law and each and every person liable under this indemnity shall at your request submit to the jurisdiction of the High Court of Justice of England.


Yours faithfully

For and on behalf of

[insert name of Requestor]



<u>RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845</u>
<u>CP DATED 19th AUGUST 2010</u>

The Requestor

Signature


STANDARD FORM LETTER OF INDEMNITY TO BE GIVEN IN RETURN FOR
DELIVERING CARGO AT A PORT OTHER THAN THAT STATED IN THE BILL OF
LADING AND WITHOUT PRODUCTION OF THE ORIGINAL BILL OF LADING

### Letter Head of Charterers

[
*insert*
*date*]

To:  [*insert name of Owners*]
    The Owners of the [*insert name of ship*]
    [*insert address*]

Dear Sirs

| | |
|---|---|
| Ship: | [*insert name of ship*] |
| Voyage: | [*insert load and discharge ports as stated in the bill of lading*] |
| Cargo: | [*insert description of cargo*] |
| Bill of lading: | [*insert identification numbers, date and place of issue*] |

The above cargo was shipped on the above ship by [*insert name of shipper*] and
consigned to [*insert name of consignee or party to whose order the bills of lading are
made out, as appropriate*] for delivery at the port of [*insert name of discharge port
stated in the bills of lading*] but we, [*insert name of party requesting substituted
delivery*], hereby request you to order the vessel to proceed to and deliver the said
cargo at [*insert name of substitute port or place of delivery*] to [*insert name of party
to whom delivery is to be made*] without production of the original bill of lading.

In consideration of your complying with our above request, we hereby agree as
follows :-





**RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845**
**CP DATED 19th AUGUST 2010**

1. To indemnify you, your servants and agents and to hold all of you harmless in respect of any liability, loss, damage or expense of whatsoever nature which you may sustain by reason of the ship proceeding and giving delivery of the cargo in accordance with our request.

2. In the event of any proceedings being commenced against you or any of your servants or agents in connection with the ship proceeding and giving delivery of the cargo as aforesaid, to provide you or them on demand with sufficient funds to defend the same.

3. If, in connection with the delivery of the cargo as aforesaid, the ship, or any other ship or property in the same or associated ownership, management or control, should be arrested or detained or should the arrest or detention thereof be threatened, or should there be any interference in the use or trading of the vessel (whether by virtue of a caveat being entered on the ship's registry or otherwise howsoever), to provide on demand such bail or other security as may be required to prevent such arrest or detention or to secure the release of such ship or property or to remove such interference and to indemnify you in respect of any liability, loss, damage or expense caused by such arrest or detention or threatened arrest or detention or such interference, whether or not such arrest or detention or threatened arrest or detention or such interference may be justified.

4. If the place at which we have asked you to make delivery is a bulk liquid or gas terminal or facility, or another ship, lighter or barge, then delivery to such terminal, facility, ship, lighter or barge shall be deemed to be delivery to the party to whom we have requested you to make such delivery.

5. As soon as all original bills of lading for the above cargo shall have come into our possession, to deliver the same to you, or otherwise to cause all original bills of lading to be delivered to you.

6. The liability of each and every person under this indemnity shall be joint and several and shall not be conditional upon your proceeding first against any person, whether or not such person is party to or liable under this indemnity.

<u>RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010</u>

7. This indemnity shall be governed by and construed in accordance with English law and each and every person liable under this indemnity shall at your request submit to the jurisdiction of the High Court of Justice of England.

Yours faithfully
For and on behalf of
[*insert name of Requestor*]
The Requestor

Signature

STANDARD FORM LETTER OF INDEMNITY FOR RE-ISSUING BILL OF LADING

**Letter Head of Charterers**

[*insert date*]

To :      [*insert name of Owners*]
          The Owners of the [*insert name of ship*]
          [*insert address*]

Dear Sirs

Ship:            [*insert name of ship*]
Cargo:           [*insert description of cargo*]
B/L number:      [*insert identification numbers*]
B/L date:        [*insert date and place of issue*]
Quantity:        [*insert quantity of cargo*]
Shipper:         [*insert name of shipper*]
Consignee:       [*insert name of consignee*]
Discharge port:  [*insert name of discharge port*]
Load port:       [*insert name of load port*]

45





RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845
CP DATED 19th AUGUST 2010

The above cargo was shipped on the above ship by [*insert name of shipper*] and consigned to [*insert name of consignee or party to whose order the bill of lading is made out, as appropriate*] and three (3) sets of the above bill of lading has been issued with above details (hereafter referred to as the "existing bill of lading").

We hereby request you to re-issue three (3) full sets of original bill of lading (hereafter referred to as the "new bill of lading") for the above shipment with the details as set out below in exchange for the full sets of all the original existing bill of lading and to discharge and deliver the said cargo at (insert name of discharge port) against production of and in accordance with at least one original of the "new bill of lading" as set out below:

| | |
|---|---|
| Cargo: | [*insert description of cargo*] |
| B/L number: | [*insert identification numbers*] |
| B/L date: | [*insert date and place of issue*] |
| Quantity: | [*insert quantity of cargo*] |
| Shipper: | [*insert name of shipper*] |
| Consignee: | [*insert name of consignee*] |
| Discharge port: | [*insert name of discharge port*] |
| Load port: | [*insert name of load port*] |

In consideration of your complying with our above request, we hereby agree as follows :-

1.  To indemnify you, your servants and agents and to hold all of you harmless in respect of any liability, loss, damage or expense of whatsoever nature which you may sustain by reason of issuing the new bill of lading and discharging and delivering the cargo in accordance with our above request irrespective of whether such liability, loss, damage and/or expense have been caused, sustained or incurred due to your gross negligence or lack of exercise of due diligence.

2.  In the event of any proceedings being commenced against you or any of your



<u>RIDER CLAUSES TO THE CHARTER PARTY OF M/V TBN MES 1845</u>
<u>CP DATED 19th AUGUST 2010</u>

servants or agents in connection with the issuance of new bill of lading and discharging and delivering the cargo as aforesaid, to provide you or them on demand with sufficient funds to defend the same.

3.  If, in connection with the issuance of new bill of lading and discharging and delivering the cargo as aforesaid, the ship, or any other ship or property in the same or associated ownership, management or control, should be arrested or detained or should the arrest or detention thereof be threatened, or should there be any interference in the use or trading of the vessel (whether by virtue of a caveat being entered on the ship's registry or otherwise howsoever), to provide on demand such bail or other security as may be required to prevent such arrest or detention or to secure the release of such ship or property or to remove such interference and to indemnify you in respect of any liability, loss, damage or expense caused by such arrest or detention or threatened arrest or detention or such interference , whether or not such arrest or detention or threatened arrest or detention or such interference may be justified.

4.  The liability of each and every person under this indemnity shall be joint and several and shall not be conditional upon your proceeding first against any person, whether or not such person is party to or liable under this indemnity.

5.  This indemnity shall be governed by and construed in accordance with English law and each and every person liable under this indemnity shall at your request submit to the jurisdiction of the High Court of Justice of England.

Yours faithfully

For and on behalf of
[*insert name of Requestor*]
The Requestor


.........................................
Signature

47

