UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



DRY HANDY INVESTMENTS, LTD.,

            **Plaintiff,**

v.                                         **Civil No. 2:13cv678**

CORVINA SHIPPING CO. S.A.,
and
COMPANIA SUD AMERICANA DE VAPORES S.A.,

            **Defendants.**

## OPINION AND ORDER

This matter is before the Court on a motion by Limari Shipping, Ltd. ("Claimant") to quash an <u>ex parte</u> order issued by this Court on November 27, 2013. For the reasons set forth below, the Court **GRANTS** Claimant's motion. Plaintiff's request for attorneys' fees and costs is **TAKEN UNDER ADVISEMENT.**

### I. FACTUAL AND PROCEDURAL BACKGROUND

On November 27, 2013, Plaintiff Dry Handy Investments, Ltd. ("Plaintiff") filed a Verified Complaint alleging breach by Defendant Corvina Shipping Co. S.A. ("Corvina") of a joint venture agreement ("JVA") between Plaintiff and Corvina. ECF No. 1. The Verified Complaint also named Compania Sud Americana de Vapores S.A. ("CSAV") as a Defendant, claiming that "CSAV totally dominated and controlled Corvina as an alter ego, subservient entity and/or instrumentality." <u>Id.</u> at 7. Plaintiff's Verified Complaint described the relationship

between Corvina and CSAV, alleging, <u>inter alia</u>, that "CSAV was the 100% owner and corporate parent of Corvina," that Corvina "actually carr[ied] out the CSAV's business and not its own," and that Corvina and CSAV shared "officer[s]," "director[s]," "employees," and "email addresses." <u>Id.</u> at ¶¶ 44-53. The Verified Complaint asserted that Corvina had "no actual offices," "phone or fax numbers," "no internet website," and that Corvina "failed to maintain proper corporate books and records." <u>Id.</u> at ¶¶ 54-56, 65. Plaintiff contended that, because CSAV and Corvina had "participated in cross-collateralization," "failed to maintain corporate formalities," and "did not operate at arms-length," "the corporate form of Corvina must be disregarded as a matter of law and equity and [CSAV and Corvina] are therefore liable jointly and severally for the Plaintiff's claims herein." <u>Id.</u> at ¶¶ 69, 72.

Along with its Verified Complaint, Plaintiff filed a motion pursuant to Supplemental Admiralty Rule B for attachment of the M/V LIMARI ("the ship"), which was expected to arrive in the Eastern District of Virginia on November 30, 2013. ECF No. 3. Plaintiff requested attachment of the ship "in order to secure [Plaintiff's] maritime claims against [Defendants] . . . based on Corvina's breach of its obligations under the parties' Joint Venture Agreement ("JVA")." ECF No. 4 at 1. As required by Rule B, Plaintiff asserted that its "cause of action is

2

maritime," that "Defendants cannot be 'found' in the District," and that "Defendants have, or will soon have, property in the District." Id. at 5-8. Although the ship, according to Plaintiff, was "legally, equitably and beneficially owned by Defendant CSAV," id. at 8, Plaintiff argued that attachment of the ship was proper because, "where issuance of process pursuant to Rule B is allowed as to Defendant Corvina, it too should be allowed as against Corvina's alter ego, CSAV," id. at 9.

As is the Court's custom upon the filing of such an action, the Court met with Plaintiff's counsel in chambers. The Court conducted an on-the-record review of the Verified Complaint and accompanying documents filed earlier that day. (Transcript pending). The Court, after considering Plaintiff's motion and argument, granted the motion and issued an Ex Parte Order for Process of Maritime Attachment and Garnishment. ECF No. 8. The ship was arrested on November 30, 2013. On December 2, 2013, Claimant filed a Motion to Quash the Order of Attachment and Garnishment and requested an expedited hearing on the matter, pursuant to Supplemental Admiralty Rule E(4)(f). ECF No. 14. Claimant argued that the JVA was not a maritime contract within the Court's admiralty jurisdiction and, in any event, the ship was owned by Claimant, "a third party," not Corvina or CSAV. ECF No. 15 at 11. Claimant also sought an award of attorneys'

3

fees and costs "for defending the wrongful attachment" of the ship. ECF No. 14 at 1.

The Court held a hearing on Claimant's motion on December 3, 2013, at which time the parties explained that the ship and her cargo were at anchorage and ready to proceed to her next port. After hearing argument, the Court ordered expedited briefing of the issues. Plaintiff filed a brief in opposition to Claimant's motion, as well as numerous exhibits, on December 4, 2013. ECF Nos. 23-25. Claimant filed a reply brief on December 5, 2013. ECF No. 26. Accordingly, this matter is ripe for review.

## II. STANDARD OF REVIEW

"Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted." Supplemental Rule E(4)(f). The burden is upon the plaintiff to show his compliance with Supplemental Rule B by establishing 1) "a valid prima facie admiralty claim against the defendant;" 2) that "the defendant cannot be found within the district;" 3) that "the defendant's property may be found within the district;" and 4) that "there is no statutory or maritime bar to the attachment." Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 541 (4th Cir. 2013) (quoting Aqua Stoli Shipping Ltd.

v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006)).
If the plaintiff "fails to sustain his burden of showing that he
has satisfied the requirements of Rule B and E," the attachment
must be vacated. Aqua Stoli, 460 F.3d at 445.

## III. DISCUSSION

Claimant argues that Plaintiff failed to "allege a claim
within the Court's jurisdiction" because the JVA "is not a
maritime contract." ECF No. 15 at 4. Claimant also argues that
Plaintiff has not established that Claimant "is an alter ego of
CSAV." Id. at 11. Regarding the nature of the JVA, Plaintiff
responds that the United States Supreme Court's decisions in
Exxon Corp. v. Cent. Gulf Lines, 500 U.S. 603 (1991) and Norfolk
S. Ry. Co. v. Kirby, 543 U.S. 14 (2004), "modernized and
expanded maritime jurisdiction by focusing on the question of
whether the primary objective of the contract was maritime
commerce." ECF No. 25 at 5. Plaintiff and Claimant disagree as
to "the primary objective of the contract," Plaintiff arguing
that the purpose of the JVA was to create a joint venture "to
conduct a variety of classic maritime activities," id. at 5, and
Claimant arguing that "the JVA is merely a shareholder agreement
creating the operating rules for a joint venture," ECF No. 15 at
5. The Court, however, need not decide whether the JVA is a
maritime contract because Plaintiff has failed to make a valid

prima facie claim that the ship belongs to either of the Defendants under Plaintiff's alter ego theory.

"'[A] corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as "piercing the corporate veil."'" Vitol, 708 F.3d at 543 (quoting Arctic Ocean Int'l v. High Seas Shipping, Ltd., 622 F. Supp. 2d 46, 53 (S.D.N.Y. 2009)). "The alter ego doctrine may be used to hold shareholders liable for the debts of their corporation (traditional veil piercing), to hold a corporation liable for the debts of a sole shareholder (reverse veil piercing), or to hold parent, subsidiary or affiliate corporations liable for the debts of another corporation." Medici888, Inc. v. Rileys Ltd., No. 2:12cv317, 2013 U.S. Dist. LEXIS 144231, at *9 (E.D. Va. Sept. 3, 2013). However, "decisions to pierce a corporate veil, exposing those behind the corporation to liability, must be taken reluctantly and cautiously." Vitol, 708 F.3d at 543-44.

The Fourth Circuit has "articulated several factors that 'guide the determination of whether one entity constitutes the alter ego of another.'" Id. at 544 (quoting Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line, 160 F.3d 170, 174 (4th Cir. 1998)). These factors include:

> gross undercapitalization, insolvency, siphoning of funds, failure to observe corporate formalities and maintain proper corporate records, non-functioning of officers, control by a dominant stockholder, and

   injustice or fundamental unfairness[,] . . .
   intermingling of funds; overlap in ownership,
   officers, directors, and other personnel; common
   office space; the degrees of discretion shown by the
   allegedly dominated corporation; and whether the
   dealings of the entities are at arm's length.

Id. (citations and internal quotation marks omitted). "The

conclusion to disregard the corporate entity may not, however,

rest on a single factor, whether undercapitalization, disregard

of corporation's formalities, or what-not, but must involve a

number of such factors; in addition, it must present an element

of injustice or fundamental unfairness." De Witt Truck Brokers,

Inc. v. W. Ray Flemming Fruit Co., 540 F.2d 681, 687 (4th Cir.

1976). Indeed, it is only in those "extraordinary cases, such

as the corporate form being used for wrongful purpose," where

"courts will pierce the corporate veil and disregard the

corporate entity." Vitol, 708 F.3d at 544.

   In Count One of the Verified Complaint, Plaintiff alleges

Corvina breached the JVA. In Count Two of the Verified

Complaint, Plaintiff alleges the "alter ego liability of CSAV,"

based on the relationship between CSAV and Corvina. ECF No. 1

at 7. Plaintiff then requests a Rule B attachment of the ship,

alleging that, upon "information and belief," the ship is

"legally, equitably and beneficially owned by CSAV, and/or . . .

is the subject of a charter party contract between CSAV and the

nominal owner of the vessel . . . ." ECF No. 1 at ¶ 75. Thirty

paragraphs describe the relationship between CSAV and Corvina in

an effort to support Plaintiff's assertion that "CSAV is Defendant Corvina's alter ego." ECF No. 4 at 9. However, Plaintiff failed to establish, either in its Verified Complaint, Motion for Attachment, or Brief in Opposition to Claimant's Motion to Quash the Order of Attachment and Garnishment, that Claimant is an alter ego of either Corvina or CSAV. The Verified Complaint briefly acknowledges Claimant as the "registered owner" of the ship but, relying on CSAV's 2007 Annual Report, alleges that the ship "is legally, equitably and beneficially owned by Defendant CSAV" because "CSAV ordered the construction" of the ship in 2005 and "issued a bond . . . to finance it," and because one "officer of CSAV" is also a "director of Corvina" and "an officer or director of [Claimant]." ECF No. 1 at ¶¶ 76-84. Plaintiff's memorandum supporting its Motion for Attachment discusses only the alleged alter ego relationship between CSAV and Corvina, but fails to allege any relationship between Defendants and Claimant. In its opposition to Claimant's Motion to Quash the Order of Attachment and Garnishment, Plaintiff restates the ten paragraphs of its Complaint and refers to "CSAV's own financial statements and Annual Reports" to "provide much of the basis" for its alter ego claim and to show that a claim against Claimant is "plausible." ECF No. 25 at 28. Plaintiff contends that CSAV's financial statements and annual reports prove "undercapitalization" and

8

opines that "the mere fact that defendants have been unable to post a surety bond speaks volumes." Id. at 20-21. Plaintiff also asserts that "CSAV's Annual Reports clearly establish that [CSAV] guaranteed [Claimant's] financial obligations, specifically in relation to [Claimant's] debt to the bank that financed the vessel's construction." Id. at 21.

A careful review of those documents, however, reveals only that CSAV listed Claimant as an "associate" company and that CSAV "granted a bond" for the ship's construction. See, e.g., Ex. 2, ECF No. 25, at 12. The Court finds no evidence of undercapitalization in any of the documents provided by Plaintiff and declines Plaintiff's request to infer undercapitalization based solely on Claimant's decision not to post a surety bond before obtaining a ruling from the Court on its motion. Moreover, Plaintiff's identification of one "officer of CSAV," who is also a "director of Corvina" and "an officer or director of Limari," ECF No. 1 at ¶ 81, is insufficient to prove Plaintiff's alter ego theory regarding Claimant. See United States Fire Ins. Co. v. Allied Towing Corp., 966 F.2d 820, 828 (4th Cir. 1992) ("The corporate veil . . . may not be pierced solely because of an overlap (or even identity) of corporate officers and directors."). Indeed, "[o]ne-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying

the alter ego theory to pierce the corporate veil," Hukill v.
Auto Care, Inc., 192 F.3d 437, 444 (4th Cir. 1999), without an
indication of some "injustice or fundamental unfairness," De
Witt Truck Brokers, 540 F.2d at 687.    The Court hesitates to
even acknowledge Plaintiff's conclusory allegations that CSAV,
Corvina, and Limari "do not compete with one another[,] do not
require    documentation,    collateral,    or    consideration    for
transactions," and "do not deal with one another at arm's
length," ECF No. 25 at 24, because these bare assertions lack
any factual support, and the documents submitted by Plaintiff
provide no basis for such assertions.   The documents submitted
by Plaintiff also fail to establish that CSAV, Corvina, and
Limari "act in concert," "share office space, telephone and fax
numbers," and "cross-collateralize," or that CSAV "dominates and
controls Corvina and Limari to the extent that Corvina and
Limari . . . are nothing more than a shell company doing CSAV's
business and not business of their own." Id.    Plaintiff's
unsupported factual assertions fail to make a prima facie
showing as to any of the Vitol factors, nor do they indicate any
"element of injustice or fundamental unfairness." De Witt Truck
Brokers, 540 F.2d at 687.    Therefore, the attachment simply
cannot stand.    Claimant's Motion to Quash the Order of
Attachment and Garnishment is **GRANTED**.   Because the M/V LIMARI
is at anchorage with cargo, the Court will **TAKE UNDER ADVISEMENT**

10

Claimant's request for attorneys' fees and costs and determine whether further briefing is required of the parties on that issue at a later time.

### IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Claimant's Motion to Quash the Order of Attachment and Garnishment and **TAKES UNDER ADVISEMENT** Claimant's request for attorneys' fees and costs.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order immediately to all counsel of record.

It is so **ORDERED**.

/s/

Mark S. Davis
United States District Judge

Norfolk, Virginia
December __6__, 2013, 3:23 p.m.

11